JAMES H. HALL, Respondent, v. FRANCES S. HALL, Appellant.

St. Louis Court of Appeals, December 27, 1898.

1. **Divorce**: CONFIDENTIAL COMMUNICATIONS. In the case at bar, the letters of the wife to her husband being confidential conmmunications between the two during the marriage relation, were clealy incompetent when objected to on that ground.

2. ———: ———: DESERTION: EVIDENCE. To prove desertion in the statutory sense as affording a ground of divorce, it is essential to show that the absence of the defendant was not justified by the conduct of the plaintiff; that it was continued for the space of one year without any intention on the part of the absentee during the period to resume the marital relation, and that plaintiff neither consented nor acquiesced in the separation.

*Appeal from the St. Louis City Circuit Court.*—Hon. DANIEL D. FISHER, Judge.

REVERSED.

WILLIAM F. WOERNER and CHARLES W. BATES for respondent.

The court did not err in overruling defendant's objections to the letters from defendant to plaintiff, (a) They constitute a part of the *res gestae* of defendant's absence, and were admissible. Darrier v. Darrier, 58 Mo. 222; State v. Newberry, 43 Mo. 429; Sauter v. Scrutchfield, 28 Mo. App. 150. (b) Defendant waived objections by not objecting when

the letters were offered in evidence. Where a party has an opportunity to interpose an objection, he can not take the chances that the evidence will be favorable to him, and when it turns out otherwise, then, for the first time, object to it. Bruns v. Capstick, 46 Mo. App. 397; Foster v. Railroad, 115 Mo. 165, 183; Maxwell v. Railroad, 85 Mo. 95, 106. In a trial by the court the admission of incompetent or immaterial evidence, even though it had been properly objected to, is not reversible error where there is sufficient evidence admitted without objection upon which to base the finding and decree. Miller v. Miller, 14 Mo. App. 418, 421. The wife is bound to follow the fortunes of the husband, and live where he chooses to live, and in the style and manner which he may adopt; and where the husband furnishes such a home and the reasonable comforts of life and is not guilty of misconduct toward her, and she, under these circumstances, absents herself, her absence is without cause, and the husband is entitled to a divorce. Messenger v. Messenger, 56 Mo. 329; Droege v. Droege, 52 Mo. App. 84–91; Kaster v. Kaster, 43 Mo. App. 115; Campbell v. Campbell, 73 Mo. App. 579, 584.

JOHNSON, HOUTS & MARLATT for appellant.

On the admissibility of the letters from the defendant to the plaintiff: (a) Letters from the wife to the husband are privileged and can not be testified to by either of them, and are inadmissible in evidence while in the possession of either of them. Mahner v. Linck, 70 Mo. App. 380; Brown v. Brown, 53 Mo. App. 453; King v. King, 42 Mo. App. 454; Ayers v. Ayers, 28 Mo. App. 97; State v. Ulrich, 110 Mo. 364; Miller v. Miller, 14 Mo. App. 418; Moore v. Moore, 51 Mo. 118; Berlin v. Berlin, 52 Mo. 151. On whether or not there is any

evidence of a desertion within the interpreted meaning of the statute: (a) Although desertion statutes differ, their interpreted effect is practically the same. 1 Bishop's Mar., Div. and Sep., secs. 1664–1668; 5 Am. and Eng. Ency. of Law, p. 799, note. (b) There must exist an intent to cease permanently to cohabit, formed before and continued during the statutory period. 5 Am. and Eng. Ency. of Law, p. 799; 1 Bishop on Mar., Div. and Sep., secs. 1662, 1663; Bennett v. Bennett, 43 Conn. 313; Fulton v. Fulton, 36 Miss. 518. (c) The mere fact that the parties are living apart does not even raise a presumption of desertion. Jennings v. Jennings, 13 N. J. Eq. 38, 39; Cook v. Cook, 13 N. J. Eq. 263. (d) If the party who has left is looking forward to a renewal of cohabitation, as where she or he is absent on business, or where there are pending treaties for a renewal of cohabitation, there is no desertion. 5 Am. and Eng. Ency. of Law, p. 803; Rudd v. Rudd, 33 Mich. 101, 102; Fulton v. Fulton, 36 Miss. 518; Aldridge v. Aldridge, 1 Swab. & T. 88; Williams v. Williams, 3 Swab. & T. 517. (e) If the original separation is by mutual consent, the desertion dates from a refusal of a request to cohabit. 1 Bishop on Mar., Div. and Sep., sec. 1697; Hankinson v. Hankinson, 33 N. J. Eq. 66; Schanck v. Schanck, 33 N. J. Eq. 363; Conger v. Conger, 13 N. J. Eq. 286.

BOND, J.—The husband sues the wife for divorce, for alleged unreasonable desertion for the statutory period. The answer admits absence for more than one year, but denies that it was without the husband's consent and alleges his full approval, and further avers a willingness to return if she is provided with the money to defray her expenses home. The evidence shows that the parties were married in June, 1894; that prior

to that time plaintiff lived in St. Louis, and defendant owned a corset business in New Orleans; that in December following the marriage she went to New Orleans for the purpose of closing out said business, taking with her the child of her husband by a former marriage; that she left with her husband's full knowledge and consent; that he and other of his friends attended her to the station, and that he expected her to return "whenever she saw fit." She did not return prior to this suit; that the only communications received by him from her were in the form of letters. Two of these, over her objection, were admitted in evidence. The first, dated January 19, 1895, begins to wit.

"My darling husband:—I just received your loving letter dated 17th. I was looking for it and was thus not disappointed." She then proceeded to write of her business and prospects, not necessary to be quoted, and concludes, to. wit: "Harry sends love to dear father, remembrances to all his dear friends. Accept a sweet God bless you, with love, kisses and caresses from your devoted wife, "Fannie S. Hall."
"(Write often I am lonely)."

The second letter was dated at New Orleans, June 14, 1895. It referred to an accidental injury inflicted by a toy gun in the hunds of the husband's child upon another boy. It complained of the harsh judgment of the husband in charging her with over-indulgence of his own child. It referred to a question put in one of his letters as to whether she wanted a divorce, and stated that she had replied that she did not, and added, "and I do think the question quite premature, or possibly prompted by a desire on your part. *What either of us could get a divorce upon I can't imagine.*" She then explains that she had gone to New Orleans with his full knowledge and free consent and remained

longer than she expected without fault on her part; that he had made no provision for her return. She stated that her health had been undermined by being compelled to climb the steps of their former home three times a day, sick or well; that she had been under a doctor's care most of the time during her residence in New Orleans, closing her letter as follows: "Now on the remark, 'If I choose you I do not want the store.' Can you realize what a little independence is to a woman like me who has had her own pocketbook and made her own living (and a good one too) for nearly thirteen years, to be necessitated to ask for a nickel. Now if you can give me $1,500 each year for my own personal use, to do as I please with, I will sell my store to the best advantage to please you. You know how embarrassed you have been in money matters for so long. You can't collect even what would be your living, and then you seem displeased because I still retain my own income. It goes without saying that I have made enough to run my expenses here, clothes, etc., for eight months very near, and I saved you the expense that you needed for other things. If you could have rented your place, you could have been here with me as you promised you would. Harry is better— coughs yet; takes cold very easily; does not seem to improve as I would like him to, since having the whooping cough. He says, tell dear father he is a good boy—obeys me—and would like to see you very much. Harry joins me in loving wishes for you.

"Your unpleasant wife,

"FANNIE S. HALL."

The only other evidence bearing on the intention of the defendant in going to New Orleans adduced by plaintiff was that of the cook woman, who testified that defendant stated before leaving that she was going to

stay away a few months while it was cold; but before that in talking to witness she had said that she never intended to return. Plaintiff gave evidence tending to show that he was a man of good reputation and treated his wife kindly. Defendant's deposition shows that she went to New Orleans with the approval of her husband to close out a corset business there which she owned prior to her marriage; that upon her arrival she was taken ill of pneumonia and suffered from sickness for a long time; that she found the business could not be wound up as soon as she expected, and so informed her husband; that he objected to the prosecution of the business in his name; that she proposed to quit the further conduct of the business, if he would give her what it was worth, which he declined to do, on the ground that he was not able; that about that time she joined him in the execution of instruments upon which he borrowed $3,000; that he did not furnish her sufficient money for her support and the support of his child, who remained with her about six months; that the illness which she experienced in New Orleans was contracted from exposure to which she was subjected in St. Louis in an improperly heated hotel kept by her husband. She concludes her deposition, to wit: ''I have at all times been willing to return to my husband since I came to New Orleans. I am willing to do so now; I have not had nor have I now means of my own to pay my way; if I had I would go back to him; he has never offered to furnish me with the means necessary to cover the expense of my return to St. Louis; if he will send me the money to pay my expenses, I will go back to him at once.''

The court decreed a divorce in favor of plaintiff, from which defendant appealed.

The first error assigned by appellant relates to the admission in evidence of her letters to her husband.

This being an action for divorce its consideration in this court must be governed by the rules applicable to suits in equity. Appeals in equity cases are determined according to the preponderance of the evidence. In examining the record for that purpose appellate courts may pass upon the competency of any evidence contained in the bill of exceptions, and in so doing are not compelled to reverse the decree of the trial court for misreception if that decree is still in accordance with the weight of the evidence remaining in the record after the exclusion by the appellate court of that which was improperly received by the trial court. Baxter v. Donnell, 69 Mo. App. loc. cit. 590; Goodrick v. Harrison, 130 Mo. loc. cit. 269; Harlan v. Moore, 132 Mo. 483; Green v. Ditsch, 143 Mo. loc. cit. 8; ibid, loc. cit. 659. On the other hand, if after the rejection by the appellate court of incompetent evidence, the preponderance of the proof left in the record is opposed to the findings of the decree appealed from, it must be set aside and a decree rendered in conformity with the weight of the competent evidence. In the case at bar the letters of the wife to her husband being confidential communications between the two during the marriage relation, were clearly incompetent when objected to on that ground, and their reception in evidence was manifest error. Mahner v. Linck, 70 Mo. App. 380; Brown v. Brown, 53 Mo. App. 453; State v. Ulrich, 110 Mo. 364. When this evidence is exscinded from the record, the only thing left bearing on an intention on the part of defendant not to return to her husband is the testimony of the cook, that prior to her departure defendant said she intended to stay only during the cold months; but that on a former occasion defendant had expressed an intention not to return. This statement is equivocal and unsatisfactory, and its probative force is overcome in our opinion by

the clear and positive statement of defendant of the business nature and purpose of her trip to New Orleans, of the exigencies which prolonged her stay, growing out of ill health, the prevalence of yellow fever in that state and business reverses; of her willingness at all times to return to her husband, if provided with the means of so doing, and the undisputed fact that she left in the first instance with his full consent and approval. To prove desertion in the statutory sense as affording a ground of divorce, it is essential to show that the absence of the defendant was not justified by the conduct of the plaintiff; that it was continued for the space of one year without any intention on the part of the absentee during the period to resume the marital relation, and that plaintiff neither consented nor acquiesced in the separation. State v. Weber, 48 Mo. App. 500; Davis v. Davis, 60 Mo. App. loc. cit. 554. In this case the weight of the competent evidence fails to show that the defendant did not intend to resume the relation of wife in a reasonable time, having in view the accomplishment of the object of her departure, or whenever her husband would make suitable provision for her return; nor does it sufficiently negative his consent to the separation. These were fatal omissions in the proof adduced by plaintiff under the rule announced in the cases above cited. Our conclusion is that the decree of the trial judge was contrary to the weight of the competent evidence adduced on the trial. It will therefore be reversed. All concur.