## WILLIAMS, Appellant, v. WILLIAMS, Respondent.

**St. Louis Court of Appeals, January 8, 1907.**

**DIVORCE: Desertion: Refusal to Cohabit.** Persistent and continuous refusal by the wife, for several years, to cohabit with her husband, without good reason, is not cause for divorce on the ground of "desertion," where the parties continued to live together in the same house.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher,* Judge.

AFFIRMED.

*Robert L. McLaran* for appellant.

(1) For either party to a marriage to refuse the other his marital rights, without just cause, constitutes matrimonial desertion. 1 Bishop on Marriage, Divorce and Separation, p. 697, sec. 1678; 1 Nelson on Divorce and Separation, sec. 71; Loyd's Law of Divorce, p. 170; Sisemore v. Sisemore, 17 Ore. 542; Whitfield v. Whitfield, 89 Ga. 471; Stein v. Stein, 5 Colo. 55; Dyer v. Dyer, 5 N. H. 271; Fitts v. Fitts, 46 N. H. 184. (2) Irremediable physical incapacity of either party to a marriage to have sexual connection with the other constitutes impotency. 1 Bishop on Marriage, Divorce and Separation, p. 328, sec. 766; Kempf v. Kempf, 34 Mo. 211.

*Davis Biggs* for respondent.

(1) Defendant was not guilty of statutory desertion or desertion of any character. The mere refusal on the part of defendant of sexual intercourse, even though it be without cause or justification, is not such an abnegation of all the duties of the marriage relation as to constitute desertion. Southwick v. Southwick, 97 Mass. 327, 93 Am. Dec. 95; Stewart v. Stewart, 78 Maine 548, 57 Am. Rep. 822; Cowles v. Cowles, 112 Mass. 298; Steele v. Steele, 1 McArthur (D. C.) 505; Schoessow v. Schoessow, 83 Wis. 553; Fritz v. Fritz, 138 Ill. 436, 32 Am. St. Rep. 156; Segelbaum v. Segelbaum, 39 Minn. 258; Eshbach v. Eshbach, 23 Pa. St. 343; Reid v. Reid, 21 N. J. Eq. 331; Anonymous, 52 N. J. Eq. 349; Kennedy v. Kennedy, 87 Ill. 250; Magill v. Magill, 3 Pittsb. (Pa.) 25. (2) In the absence of proof that the health of the complaining party is either injured or threatened, the refusal of the other party to cohabit is not legal cruelty. Desborough v. Desborough, 26 Atl. (N. Y.) 852; Burton v. Burton, 52 N. J. Eq. 215; Reid v. Reid, 21 N. J. Eq. 331; D'Aguilar v. D'Aguilar, 1 Hagg. Eccl. (Eng.) 773.

BLAND, P. J.—The action is for divorce. The petition alleges that plaintiff and defendant were married March 30, 1892, and lived together until September 7, 1903.

It is alleged that from the date of the marriage until the date of separation, about eleven years, plaintiff treated defendant with kindness and affection, but that defendant without any just cause has persistently refused to permit plaintiff to have any sexual intercourse with her whatever.

The answer admitted the marriage as alleged and denied every other allegation in the petition.

After hearing the evidence the circuit court found against plaintiff and dismissed his bill. Plaintiff's evi-

dence is that at no time during the marriage would the defendant consent or submit to sexual intercourse with him, though often at proper times and places importuned by him to do so, and that he never did have sexual intercourse with her; that he was gentle and kind with her when he importuned her to concede to him his matrimonial rights, as well as at all other times; that the only excuse defendant ever made for not doing so was, that "she could not." There is no direct evidence that defendant was incapable of having sexual intercourse on account of any physical deformity or want of proper development. But there is evidence tending to show that she was suffering from organic disease of the heart; was nervous, feeble and subject to fainting spells. Plaintiff testified that he understood before he married defendant that she had some sort of heart trouble; that he saw her faint one time, but did not know that the faint was caused from heart trouble or weakness. His evidence tended to show that after the marriage the defendant had fainting spells on an average of one in every three to four months; that she recovered from the effects of these spells in from one to two days and would be able to go about her ordinary duties; that she attended dances and danced; played on drums and triangles in an amateur orchestral company, and attended the World's Fair frequently in July and August; that aside from her refusal to have sexual intercourse with him she was a kind, attentive and affectionate wife.

The parties resided in Kirkwood, St. Louis county, for several years prior to the commencement of the suit and the testimony of their neighbors is that they were an ideal couple. The separation took place on September 7, 1904. In regard to what then occurred, plaintiff testified: "I told the lady unless we could agree — unless she could conduct herself to me as a wife should to her husband, that I should have to leave, and I was told if I desired to live with her and live the way I had

been living, I could remain, but otherwise not." That he then and there separated from his wife; went to the city of St. Louis and took up his residence there and commenced his suit for divorce in a couple of days thereafter. Plaintiff was thirty-four years old, and the testimony shows that he was an able bodied man, and in good health. He proved a good character.

Thomas L. Kelton, a brother-in-law of the defendant (having married her sister), with whom plaintiff and defendant resided for four or five years before the separation testified that defendant had lived in his family as a member thereof for several years prior to her marriage to plaintiff; that when a girl she was subject to fainting spells that would occur at intervals of about one a month; that there was not a month which went by that she did not have them, and that she fainted in plaintiff's presence several times prior to the marriage; that she would be in bed after one of these spells for several days, and that her condition had grown worse since the commencement of the suit for divorce.

Dr. Pittman, defendant's family physician, testified that she was suffering from organic disease of the heart, from which there was very little, if any, hope of recovery, and gave it as his opinion, from his knowledge of her condition and knowledge of her heart trouble, that any excitement would produce a disturbance to the general nervous system, and that the act of sexual intercourse would certainly be a disturbance of the action of the heart and to her general condition, and that she was not in a condition to have sexual intercourse; that she was a small delicate woman, weighing not over one hundred and ten pounds, and requires constant rest. Other expert evidence on the part of the defendant tended to corroborate that of Dr. Pittman.

On behalf of the plaintiff the expert evidence tended to show that the exercise of sexual intercourse by her before or after recovery from one of her fainting spells

would not be injurious to her health, but that if she had intercourse, the hazard of conception would be present, and conception would be injurious to one in her physical condition. The defendant did not testify.

Impotency at the time of marriage continuing thereafter, is a statutory ground for divorce, but the refusal of either to have sexual intercourse with the other is not made a specific cause for divorce. [Section 2921, R. S. 1899.] So, also, if one of the parties absent him or herself without reasonable cause for the space of one year, the other party is, under the statute, entitled to divorce. Plaintiff contends that under the evidence he is entitled to a divorce on the ground of impotency, or of desertion, or on both grounds.

The Legislature of New Hampshire in 1821, passed the following statute:

"That any husband or wife, separating him or herself from the other, joining and uniting him or herself with any religious sect or society, that, believes, or professes to believe, the relation between husband and wife void or unlawful and such husband or wife continuing to live so united with such sect or society for the space of three years, and refusing during that time to cohabit with the other, who shall not have joined and continued united with such sect or society, shall be deemed and taken to be a sufficient cause of divorce from the bonds of matrimony."

"That in cases where such husband or wife has, before the passing of this act, so separated from the other and joined and united with such sect or society, and has continued to live with such sect or society, for said space of three years, and has so refused to cohabit during said time, the other party not having joined and continued united with such sect or society and shall for the space of six months after the passing of this act continue so separated from the other and united with

121 App—23

such sect or society, and shall, during that time, so refuse to cohabit, the same shall be deemed and taken to be a sufficient cause of divorce from the bonds of matrimony."

In Dyer v. Dyer, 5 N. H. 271, where the evidence showed the husband had joined the Society of Shakers, which professed to believe that it is unlawful for a man and wife to cohabit together as man and wife, and continued to live with them for ten years, and refused to cohabit with his wife, who did not join the society, it was held, the wife was entitled to a divorce. Bishop commenting on this case says: "The doctrine of this case, is, to repeat, that one who believes everything pertaining to marriage to be lawful, except copula, yet believes it to be unlawful, esteems the relation between husband and wife unlawful. Hence as a part of the doctrine itself that a married person, who without justification deserts copula, deserts the relation between husband and wife; in other words commits the matrimonal offense of desertion." [Bishop on Marriage, Divorce and Separation, section 1064.]

Mielziner says: "The duty of conjugal cohabitation is lawfully as well as ritually and ethically regulated in the Rabbiconical code. A continued refusal on either side regarding this duty, if not excused by sickness and circumstances afford a ground for divorce. [Belzengen, Marriage and Divorce, p. 101.]

The case of Dyer v. Dyer is approvingly cited in Fitts v. Fitts, 46 N. H. 184. The court there says: "It is the policy of the law to encourage the marital relation, not only because it tends to promote the welfare of the parties, but because it also promotes the public good."

The Colorado Statutes (vol. 3, p. 434, Colorado Annotated Statutes), provides eight causes for divorce. The fourth one is that party who has willfully deserted and absented himself or herself from the husband or

wife without reasonable cause for a period of one year."

In Stein v. Stein, 5 Colo. 55, the evidence showed that the husband ceased to occupy the bedroom with his wife in March, 1876, for the reason she would not have sexual intercourse with him, and finally left the house the May following. His bill was filed April 5, 1877. In opposition to the bill it was contended that the evidence showed that the desertion was for less than one year prior to the commencement of the suit. In disposing of this contention the court said (page 56): "Matrimonial cohabitation must certainly comprehend a living together as husband and wife, embracing relative duties as such," and held that the desertion dated from the date, May 3, 1876, the husband ceased sleeping in his wife's room.

In Whitfield v. Whitfield, 89 Ga. 471, the court held: "It is desertion by the wife, though she continue to reside in the matrimonial domicile, for her willfully, persistently and without justification to deny her husband all his conjugal rights with the intention of casting him off as a husband completely and forever."

In Sisemore v. Sisemore, 17 Oregon 545, the following definition of Bishop of desertion is approved, viz.: "Desertion in divorce law is the voluntary separation of one of the married parties from the other, or the voluntary refusal to renew a suspended cohabitation, without justification, either in the consent or wrongful conduct of the other."

Nelson says: "Where there is no peculiar form of statute indicating a contrary definition or term, desertion is believed to be, that the statutory term desertion, as applied to husband and wife, means a cessation of the marital relation and . . . it means the ceasing to live together as husband and wife. Marriage is the union of opposite sexes and sexual intercourse is the distinguishing feature of the union."

Paragraph B, vol. 14, page 612, Enc. Law & Pro-

cedure, it is said: "In some States a persistent and continued refusal of marital intercourse by one of the spouses without cause or justification, constitutes desertion, although the parties still live beneath the same roof," citing in support Fink v. Fink, 137 Cal. 559; Evans v. Evans, 93 Ky. 510; Heermance v. James, 47 Barb. (N. Y.), 120; Whitfield v. Whitfield, supra.

"By the weight of authority, however, the mere withdrawal from the marital bed is not sufficient to constitute the offense. There must be a substantial abandonment of other marital duties also," citing in support Steele v. Steele, 1 MacArthur 505; Fritz v. Fritz, 138 Ill. 436; Segelbaum v. Segelbaum, 39 Minn. 258; Annonymous, 52 N. J. Eq. 349; Throckmorton v. Throckmorton, 86 Va. 768; Schoessow v. Schoessow, 83 Wis. 553. In Maine utter desertion is made a ground for divorce.

In Stewart v. Stewart, 78 Me. 548, it was held, that a refusal of sexual intercourse, while marital cohabitation continues, does not amount to "utter desertion."

In Massachusetts where a like statute was in force, it was held in Southwick v. Southwick, 97 Mass. 327, that the mere refusal of sexual intercourse with the husband for five years consecutively, although unjustifiable by consideration of health or physical disability, is not sufficient to support a libel by the husband for divorce from the bonds of matrimony on the ground of desertion.

It seems to us that unless the meaning of the term desertion is not controlled by the wording of the statute that in all reason matrimonial desertion occurs whenever either of the spouses, without good reason or just cause, consecutively and persistently refuse to have intercourse with the other, and the conflict or apparent conflict in most of the authorities can be reconciled on account of the difference in the phraseology of the statutes in the different States making desertion or abandonment a ground for divorce.

In Davis v. Davis, 60 Mo. App. 545, and State v. Heber, 48 Mo. App. 500, it was held, to establish desertion three things must concur, "cessation from cohabitation continuing over a year; intention in the mind of the deserter not to resume cohabitation, and absence without the consent of the other party." Hence to establish desertion under our statute (section 2921 supra), there must not only be a cessation of copula, but the husband and wife must not live together under the same roof. [Hall v. Hall, 77 Mo. App. 600.]

The evidence is that the husband abided with his wife under the same roof and there is none to show they did not sleep in the same room to within a few days before the petition was filed. Hence plaintiff is not entitled to a divorce on the ground of abandonment or desertion. It is neither directly nor indirectly charged in the petition that the defendant at the time the contract of marriage was entered into was impotent and has continued so. Hence this ground for divorce is not before us for consideration, though there is some evidence in the record tending to prove it.

The petition charges, in substance, that defendant's conduct in refusing to have sexual intercourse with him injured his health. Cruel and barbarous treatment is a ground for divorce. This is not charged in the petition, nor is there any evidence tending to show that the plaintiff's health was injured by the refusal of the defendant to have sexual intercourse with him. The evidence is not clear or convincing in respect to the condition of the defendant's health at the date of the marriage, or for several years thereafter. In justification for her conduct for the last three or four years, it is proper to state that the evidence tends to show the exercise of sexual intercourse would injure her health, and that the condition of pregnancy would be hazardous to her life.

It seems to us, that viewed from any standpoint, the evidence is insufficient to warrant a divorce on any

ground stated in the petition, or intended to be stated in it. But we do not wish to be understood as holding that plaintiff is barred by the judgment in this action from prosecuting another action against his wife for divorce, on grounds other than those alleged in his petition in this case, and the judgment of the circuit court is modified to read, plaintiff's bill is dismissed without prejudice to resume on grounds not alleged in the bill.

The judgment is affirmed. All concur.