FRIEDA WERTH TARRANT, Respondent, v. WILLIAM P. TARRANT, Appellant.

St. Louis Court of Appeals, May 2, 1911.

1. DIVORCE: Habitual Drunkenness: What is. One is an habitual drunkard, within the statute making habitual drunkenness for one year ground for divorce, who has a fixed and irresistible habit of drunkenness, having by frequent indulgence lost the power or will to control his appetite, and it is not necessary that he be continually drunk or that his drunkenness incapacitate him for work, for a man may be an habitual drunkard, and yet be sober during business hours and for days and weeks together.

2. ———: Desertion of Wife as Bar: Reasonable Cause. In an action for divorce, brought by the wife, in order for her desertion of her husband to operate as a bar, such desertion

must have been without reasonable cause; and the husband's conduct may have been such as to warrant her action, although it would not entitled her to a divorce.

3. ———: **Habitual Drunkenness of Husband: Desertion of Wife as Bar: Reasonable Cause.** Where a wife had for more than sixteen months been subjected to her husband's habitual drunkenness and the evil consequences of that habit, she was not guilty of desertion in refusing to abide with him or see him when he called.

4. ———: ———: **Reformation.** The fact that a defendant becomes cured of his drink habit, after he had been addicted to it for more than the statutory period of one year and suit for divorce on that ground had been commenced, will not defeat plaintiff's right to a divorce.

5. ———: **Admission of Incompetent Testimony: Harmless Error: Appellate Practice.** Appeals in divorce cases are determined according to the rules applicable in equity cases, and the admission of incompetent evidence will not warrant a reversal, where the same facts were established by competent evidence introduced by both parties, and where, after disregarding such incompetent evidence, the decree is in accordance with the weight of the evidence remaining.

Appeal from St. Louis City Circuit Court.—*Hon. William M. Kinsey,* Judge.

AFFIRMED.

*Pearce, Davis & Curlee* for appellant.

(1)  Single or occasional acts of drunkenness do not constitute one an habitual drunkard. Evans v. Modern Woodmen, 129 S. W. 485; Jackson County v. Schmid, 124 S. W. 1074; Sitton v. Grand Lodge, 84 Mo. App. 208; Glenn v. Glenn, 87 Mo. App. 377; Ishler v. Ishler, 81 Mo. App. 567; Golding v. Golding, 6 Mo. App. 602; McBee v. McBee, 22 Ore. 329; Bizer v. Bizer, 110 Ia. 248; Walton v. Walton, 34 Mass. 195; Magahay v. Magahay, 35 Mich. 210; Richards v. Richards, 19 Ill. App. 465; State v. Robinson, 111 Ala. 482; Tatum v. State, 63 Ala. 147; Northwestern Ins. Co. v. Muskegon Bank, 122 U. S. 501; Insurance Co. v. Foley, 105 U. S. 350; Miskey's Appeal, 107 Pa. St. 611; Meathe v. Meathe, 83 Mich. 150; Ludwick v. Commonwealth, 18

Pa. St. 172; State v. Pratt, 34 Vt. 323; Dennis v. Dennis, 68 Conn. 186; Mahone v. Mahone, 19 Cal. 626. (2) Refusal of wife to follow fortunes of her husband and to live with him in any new home he may establish, if continued for the statutory period, and if without a justification, constitutes desertion of the husband by the wife. Deschodt v. Deschodt, 59 Mo. App. 102; Dwyer v. Dwyer, 16 Mo. App. 422; Jones v. Jones, 55 Mo. App. 523; Schuman v. Schuman, 93 Mo. App. 99; Friemann v. Friemann, 120 Mo. App. 430; Ashburn v. Ashburn, 101 Mo. App. 365. (3) Justification which will excuse either desertion or indignities by spouse must be of such character and dignity as would in itself constitute a separate ground of divorce. Deschodt v. Deschodt, 59 Mo. App. 102; Dwyer v. Dwyer, 16 Mo. App. 422; Jones v. Jones, 55 Mo. App. 523; Friemann v. Friemann, 120 Mo. App. 430; Kaster v. Kaster, 43 Mo. App. 115; Owen v. Owen, 48 Mo. App. 208, 212.

*H. A. Loevy* for respondent.

Appellant was addicted to habitual drunkenness for one year, which entitles respondent to divorce. R. S. 1909, sec. 2370; Golding v. Golding, 6 Mo. App. 622; 14 Cyc. 622-3; Even though he would be sober for days and weeks at a time, and competent to transact business and even if oftener sober than drunk. 1 Bishop Mar. and Div., sec. 1782, p. 740.

CAULFIELD, J.—This is a suit for divorce by the wife against the husband. The only cause alleged which we need notice is that the defendant had been addicted to habitual drunkenness for the space of one year. The circuit court granted plaintiff a divorce and defendant has appealed.

I. The defendant contends that the evidence does not sustain the charge of habitual drunkenness for the space of one year. We do not agree with him in this contention.

Tarrant v. Tarrant.

The parties were married June 19, 1903, and immediately removed to Philadelphia, the home of the defendant. About January 1, 1904, defendant commenced to drink and drank every day and was drunk once or twice a week until November, 1904. Plaintiff then came, with her husband's consent, on a visit to her parents in St. Louis, bringing her nursing infant with her. This visit was prolonged at defendant's repeated requests until July 31, 1905. There is no evidence of defendant's having been drunk during this nine month period of separation; but after plaintiff's return to Philadelphia and during four months, that is from the last of July, 1905, to the last of November, 1905, he drank continuously and got drunk eight times. Then the couple conceived the idea of going to California and on the last of November, 1905, started for Los Angeles via St. Louis. They arrived here Friday, December 1, 1905, and were met at the station by the plaintiff's family. The defendant was in a drunken condition when they arrived. They went to the home of plaintiff's parents, it having been determined that they should have a two weeks visit with them. This two weeks visit culminated in an abandonment of the California trip and a determination on the part of the couple to make their home in St. Louis. At this time the parties had one child and plaintiff was pregnant with another. The defendant stayed at the home of the plaintiff's parents for two months, or until the latter part of January, 1906. During this time he was morose and under the influence of liquor a great deal and came home drunk several times and stayed out all night on three or four occasions. He was paying no board, and his wife's mother, feeling that if he had money to spend for drink he should pay something for the keep of himself and family, suggested that he pay fifty dollars per month. He said that he could not do that at present as he was just establishing himself in his business as a law stenographer, and asked if it would be satisfactory if he got board elsewhere for himself alone. Upon her answering affirma-

tively, he told his wife of the interview with her mother and that he was going to leave the house and asked her to pack his grip. She did so and he left, taking up his quarters elsewhere in the city. After he left the house, he came back several times drunk. The second child was born on July 31, 1906, and from then until June 19, 1907, defendant testified, was his worst period of drunkenness. Between those dates, at different periods he ' had two physicians treat him for the drink habit, but without favorable effect. On June 4, 1907, he came to the house. drunk and smashed the glass panel of the door in an effort to get in. He was arrested and the next morning was fined by a police magistrate. His fine was stayed at the request of plaintiff's parents, upon his taking a pledge to abstain from intoxicating liquor for one year. He was then taken to the home of plaintiff's parents and was permitted to resume calling upon his wife and children in the evenings. He stayed sober for five or six weeks under this pledge and then commenced to drink again. In October, 1907, he went on a spree which lasted about a week. He admits that he was drunk again in November. On Christmas day he got drunk and stayed drunk all week. From that time until the filing of the petition on May 9, 1908, he denies that he was drunk. When the petition was filed, he went on a spree which lasted up to July 1908. His business friends then persuaded him to go to an institution for the cure of drunkenness, raising a fund by subscription for that purpose. He now appears to be cured of his habit. It appears from the evidence that the defendant never let his work suffer through his weakness, but he was down at business every day excepting the few times mentioned when he was off upon a prolonged spree. His drunkenness occurred at night and usually at the end of the week so that he could rest over Sunday. It was accompanied by moroseness and abusiveness and distressing scenes and occurrences which we need not set forth.

There are 386 pages of printed record in this case and, of course, the foregoing is but a brief impression of its bearing on the charge of habitual drunkenness. But we have carefully read and considered all the evidence and we deem it quite conclusive that for the statutory period defendant had a fixed and irresistible habit of drunkenness, having by frequent indulgence lost the power or will to control his appetite for intoxicating liquors. This was sufficient to justify the decree. [Sitton v. Grand Lodge, 84 Mo. App. 208; Richards v. Richards, 19 Ill. App. 465.] It was not necessary to sustain the charge, that it be shown that defendant was continually intoxicated or that he had a habit of getting drunk during the usual business hours of the day or that his drunkenness incapacitated him to perform the duties of his profession or business. "A man may be an habitual drunkard and yet be sober for days and weeks together." He may be an habitual drunkard and yet be sober during business hours. [Richards v. Richards, supra. Brown v. Brown, 38 Arkansas 324; McGill v. McGill, 19 Fla. 341.]

II. By way of recrimination defendant next contends that plaintiff was guilty of desertion in refusing for the space of one year to abide with him or to see him when he called. He dates such refusal from the time he left her parents' house in January, 1906. He insists that at that time his habit of drunkenness had not existed for the space of one year and she had no adequate cause for divorce; therefore her refusal constituted desertion. We may accept defendant's premise without agreeing to his conclusion. His conduct might have been such as to warrant her action even if it would not entitle her to a divorce. [Gillinwaters v. Gillinwaters, 28 Mo. 60; Neff v. Neff, 20 Mo. App. 182.] Her desertion must have been "without a reasonable cause". Now we find from the evidence that prior to his leaving plaintiff's parental home, the plaintiff had been subjected to sixteen months of defendant's habitual drunkenness and

all the evil consequences of that dreadful habit. Sometimes he had been quarrelsome and called her vile names, but generally he was morose and had a "terrible look," a "diabolical expression." His habit had invested her with sentiments of fear, loathing and hopelessness. She was a woman of delicacy and refinement and she looked forward to the recurrence of his drunken visits and home-coming with horror. After he left her his habit of drunkenness continued and she was informed of it. He confirmed this information by coming to the house on several occasions while drunk. That her separation from him, so far as she was responsible for it, was due only to his misconduct, was shown most eloquently by that probationary receiving-back of defendant after his pledge to the police justice and after he had long since given her adequate cause for divorce. The law of this state is not so cruel as to compel a woman to live with a man under the conditions disclosed by this record or to brand as misconduct her righteous action in refusing to do so. [Gillinwaters v. Gillinwaters, supra; Neff v. Neff, supra.]

III. The defendant next asserts that, through her mother, the plaintiff offered to him "indignities" within the meaning of the statute, and that his habit of drunkenness was provoked and brought about by the plaintiff's refusal to live with him or to see him. We find no support in the evidence for these charges. Plaintiff is a woman of high character, with a good mother, and their conduct was commendable under the very distressing circumstances produced by defendant. Her refusal to live with him and to see him was caused, as we have mentioned, by his habit of drunkenness. The habit long preceded and could not have been provoked by the refusal.

IV. Nor will the fact that the defendant became cured of his habit, after he had been addicted to it for the statutory period and the suit had been commenced,

be permitted to defeat plaintiff's suit, there having been no condonation within the meaning of the law. Defendant cannot be too highly commended for his final success in overcoming the habit which appears to have been the only substantial fault of an otherwise good man, but his success comes too late for the law to aid him. [1 Bishop, Marriage, Divorce and Separation, sec. 1775; Moore v. Moore, 41 Mo. App. 176.]

V. The defendant complains that the court over his objection, "asked and elicited from Dr. Mary Sargent, that she 'kept a sanitarium;' that defendant 'was received there as a patient in March, 1907;' that she 'treats in her sanitarium all classes of medical cases, including rheumatism, but not surgical cases;' that she took the appellant with 'the idea in view,' and 'in part,' 'to cure him of the habit of drinking;' that that was 'one of the purposes she took him.' "

We may add that this testimony was elicited by the court on the *voir dire* with a view to ascertaining whether the witness was competent to testify. After eliciting it, the court said: "I will have to hold, under these circumstances, that any knowledge acquired by Dr. Sargent, within the time mentioned, falls within the purview of confidential relations." But, however that may be, appeals in divorce cases are determined according to the rules applicable to appeals in equity cases, and according to those rules the admission of that testimony will not justify a reversal, for the reason that the facts it tends to prove were established by competent testimony of the plaintiff and defendant. [Evangelical Synod v. Schoeneich, 143 Mo. 652; 45 S. W. 647;] and for the reason that the decree is in accordance with the weight of the evidence remaining in the record after the exclusion by us of said testimony. [Hall v. Hall, 77 Mo. App. 600.]

We are satisfied that in all respects the decree should be affirmed. It is so ordered. *Nortoni, J.* concurs; *Reynolds, P. J.*, not sitting.