**Donald David HARRIS, Jr., Petitioner–Respondent,**

v.

**DIRECTOR OF REVENUE, STATE OF MISSOURI, Respondent–Appellant.**

**No. 25631.**

Missouri Court of Appeals, Southern District, Division Two.

April 28, 2004.

Jeremiah W. (Jay) Nixon, Atty. Gen., Rebecca J. Miller, Asst. Atty. Gen., Jefferson City, for appellant.

NANCY STEFFEN RAHMEYER, Chief Judge.

The Director of the Missouri Department of Revenue ("Director") appeals a judgment granting Donald David Harris,

Jr. ("Driver") hardship driving privileges pursuant to Section 302.309.[1] We reverse.

On February 4, 2003, Driver filed a petition for hardship driving privileges in circuit court. In his petition and in the accompanying sworn affidavit, Driver averred that more than three years had passed since his driving privileges were revoked and that he was not ineligible to receive a hardship driving privilege pursuant to Section 302.309.3(5)(c) or any other provision of Section 302.309.3(5). *See* Section 302.309.3(6)(a).[2] Driver, however, failed to attach a certified copy of his driving record to his petition as required by Section 302.309.3(3).[3]

In its answer to Driver's petition, Director asserted that Driver was "otherwise ineligible" to receive hardship driving privileges "in that [Driver] has a conviction for a felony the commission of which involved a motor vehicle." Additionally, Director pled that granting Driver the requested privileges would be improper because a review of his driving record "demonstrated

that he is a habitual drunkard pursuant to [Section] 302.060.4." Director attached to its Answer a certified copy of Driver's Missouri Driver Record, copies of uniform traffic tickets issued to Driver, and records of convictions for those offenses.

On April 7, 2003, the case was submitted to the trial court "upon the pleadings and records in the file." Finding that Director "[did] not prove any felony convictions to the satisfaction of the Court," the trial court ruled Driver was statutorily eligible for a hardship license and granted his petition. Director now appeals to this Court.

The record reveals that between 1989 and 2000, Driver was convicted four times for Driving While Intoxicated ("DWI") and twice for driving with a suspended or revoked driver's license.[4] In October of 1991, due to Driver's earlier alcohol-related convictions, the Director imposed a ten-year minimum denial of his driving privileges, making Driver eligible for reinstatement on August 29, 2001.[5] Thereafter, in

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

2. Section 302.309.3(6)(a) states:
   Provided that pursuant to the provisions of this section, the applicant is not otherwise ineligible for a limited driving privilege, a circuit court or the director may, in the manner prescribed in this subsection, allow a person who has had such person's license to operate a motor vehicle revoked where that person cannot obtain a new license for a period of ten years, as prescribed in subdivision (9) of section 302.060, to apply for a limited driving privilege pursuant to this subsection if such person has served at least three years of such disqualification or revocation. Such person shall present evidence satisfactory to the court or the director that such person has not been convicted of any offense related to alcohol, controlled substances or drugs during the preceding three years and that the person's habits and conduct show that the person no longer poses a threat to the public safety of this state.

3. Section 302.309(3) states in pertinent part:
   Any application for a limited driving privilege made to a circuit court shall name the director as a party defendant and shall be served upon the director prior to the grant of any limited privilege, and shall be accompanied by a copy of the applicant's driving record as certified by the director.

4. Driver was convicted for violations of Section 577.010, DWI, on September 6, 1989; March 19, 1991; August 29, 1991; and, May 25, 1994.

5. Driver also had his licensed suspended from December 18, 1989, through January 17, 1990, due to his first DWI conviction and from March 28, 1991, through March 27, 1992, due to his second DWI conviction. Pursuant to Section 302.304, Driver has had his license suspended on the following five occasions due to the accumulation of points on his driving from March 28, 1991–March 28, 1992; from October 11, 1991–October 11, 1992; from July 6, 1997–July 6, 1998; from

July of 1997, Director suspended Driver's privileges for another ten years due to Driver's additional DWI convictions. According to the record, Driver would then be eligible to have his driving privileges reinstated on May 25, 2004.[6]

In his sole point on appeal, Director contends the trial court erred in granting Driver hardship driving privileges in that: (1) Driver was statutorily ineligible to receive such privileges due to his commission of a felony involving the use of a motor vehicle and, therefore, the trial court lacked subject matter jurisdiction; (2) Driver has a history as a habitual drunkard,[7] and, (3) Driver has failed to present evidence that he is no longer a threat to public safety.[8]

■ On appeal, the trial court's decision will be affirmed unless it is unsupported by substantial evidence, is against the weight of the evidence, or misstates or misapplies the law. *Chapman v. Lavy,* 20 S.W.3d 610, 612 (Mo.App. E.D.2000)(citing *Murphy v. Carron,* 536 S.W.2d 30 (Mo.

banc 1976)). We view the evidence in the light most favorable to the judgment entered by the trial court. *Jones v. Director of Revenue,* 18 S.W.3d 538, 539 (Mo.App. E.D.2000). A circuit court acts in excess of its jurisdiction when it grants limited driving privileges to one who is statutorily ineligible to receive them. *State ex rel. Director of Revenue v. Mobley,* 49 S.W.3d 178, 180 (Mo. banc 2001); *see also* Section 302.309.3(6).

■ The Director initially argues that the court lacks subject matter jurisdiction to grant Driver's petition. It has often been noted that "jurisdiction" is a term which is used imprecisely in judicial opinions and other legal writings, depending for its meaning on the context of the matter at issue. *Schneider v. Union Elec. Co.,* 805 S.W.2d 222, 224 (Mo.App. W.D.1991). In the context of this matter, although Director argues that the trial court did not have subject matter jurisdiction, Director is actually arguing that the court did not

October 31, 1998–October 31, 1999; and, from November 7, 2000–November 7, 2001. Additionally, Driver's privileges were revoked from November 13, 1992, through November 13, 1993, for refusing to submit to a chemical examination, pursuant to 577.041.

6. The records submitted by Director state that Driver received a "ten-year" suspension of his driving privileges on July 6, 1997, but it indicates a suspension period of only seven years, from July 6, 1997 through May 25, 2004. We are unsure of the reason for this discrepancy.

7. Section 302.060(4) dictates that the Director may not issue a driver's license "[t]o any person who is an *habitual drunkard* or is addicted to the use of narcotic drugs." (Emphasis added). While the term "habitual drunkard" is derived from the common law and subject to no singular modern-day definition, Missouri courts have previously defined it to as follows:

[A]n habitual drunkard is a person given to inebriety or the excessive use of intoxi-

cating drinks who has lost the power, or will, by frequent indulgence, to control his appetite for it. This instruction is a verbatim copy of the definition of an habitual drunkard given in Bouvier's Law Dictionary. The state of drunkenness is one where the passions are visibly excited or the judgment impaired by the stimulant of drink or drug. It necessarily involves a temporary loss of full self-control on the part of the person affected. By constant indulgence it becomes habitual. In other words, as has been well said, "the only rule is, has he a fixed habit of drunkenness?" *Sitton v. Grand Lodge of Missouri,* 84 Mo.App. 208, 212 (1900); *see also Tarrant v. Tarrant,* 156 Mo.App. 725, 730, 137 S.W. 56 (1911). In the matter at hand, it does not appear that the trial court specifically addressed Director's charge that Driver was an "habitual drunkard."

8. As noted, the court resolved the case on the pleadings and records in the file. The Director is not appealing that process, only the conclusion of the trial court.

have jurisdiction to render the order given. "Jurisdiction has many meanings depending upon the context used. 'Jurisdiction' is a loosely employed term but generally it includes three kinds of authority, over the subject matter, over a person, and to render the order given." *Scott County Reorganized Sch. Dist. v. Missouri Comm'n on Human Rights,* 872 S.W.2d 892, 893 (Mo. App. S.D.1994)(citing *Farrar v. Moore,* 416 S.W.2d 711, 713 (Mo.App.1967)). Thus, in the stricter sense, it means judicial authority over the subject matter and the parties, but in its broader sense, it includes the power to grant specific relief in cases within such authority. *Id.* If the pleadings state a matter belonging to a general class over which the authority of the court extends, then the court has subject matter jurisdiction. *Claxton v. Buzbee,* 975 S.W.2d 955, 957 (Mo.App. S.D.1998).

Section 302.309.3.1 specifically states: "All circuit courts or the director of revenue shall have jurisdiction to hear applications and make eligibility determinations granting limited driving privileges." Therefore, the trial court in this matter clearly had the requisite subject matter jurisdiction to evaluate Driver's petition and determine whether or not he was statutorily eligible for a hardship license. When the trial court heard the application of Driver for the license and reviewed the records, it ruled on his petition with the subject matter jurisdiction.

We, therefore, review Director's next contention that Driver was statutorily ineligible to receive driving privileges or, in other words, whether the court acted in excess of its jurisdiction in granting the hardship driver's license. As stated in Section 302.309.3(6)(a), as long as an applicant "is not otherwise ineligible for a limited driving privilege," a circuit court may grant limited driving privileges to that applicant. The Supreme Court of Missouri interpreted this subsection as follows in *Hagan v. Director of Revenue:*

> Giving the language of sec. 302.309.3(6)(a) its plain and ordinary meaning, an applicant is only eligible [to petition] for a hardship license if: (1) he was ineligible to obtain an operator's license for ten years pursuant to section 302.060(9); (2) he had served three years of the ineligibility; and, (3) he was not "otherwise ineligible for a limited hardship driving privilege" under "this section" which includes subsection .3(5).

968 S.W.2d 704, 706 (Mo. banc 1998).

Referring to acts that make an applicant "otherwise ineligible", Section 302.309.3(5) states in pertinent part:

> Except as provided in subdivision (6) of this subsection, no person is eligible to receive a limited driving privilege ... whose license has been suspended or revoked for the following reasons:
>
> . . . .
>
> (b) A conviction of any felony in the commission of which a motor vehicle was used.

Director asserts that, based on the above provision, Driver was statutorily ineligible to petition the trial court for limited driving privileges because he received a felony DWI conviction involving the use of a motor vehicle. In support of this contention, Director points out that Driver's Record of Conviction for his 1994 DWI indicates the case number was CR592–929FX. According to Director, this "FX" designation means the violation was considered to be a felony and, therefore, under Section 302.309.3(5)(b) Driver was ineligible to petition for a hardship license and his petition should have been dismissed instead of considered on its merits.

On their face, the records submitted in this case were insufficient to determine that any of Driver's previous DWI convic-

tions were, in fact, felony convictions. Driver was convicted of four separate DWI offenses; however, there is no indication as to the sentences received or to the classification of any of the offenses.[9] In fact, part of the records are illegible. We are left with Director's assertion that "it is reasonable to assume that the May 24, 1994 DWI matter was treated as a felony." We have no evidence before us under which this determination can logically be made; thus, the trial court did not err in finding that the State "[did] not prove any felony convictions." Our analysis, however, does not end with that finding.

We agree with Director that Driver's application for limited driving privileges under Section 302.309 should not have been granted because he was "otherwise ineligible" under Section 302.309.3(6)(a). Although the trial court found that "[Director] [did] not prove any felony convictions to the satisfaction of the Court," we note the burden of proof was upon Driver to prove he was worthy of hardship driving privileges. *See Kinzenbaw v. Director of Revenue*, 62 S.W.3d 49 (Mo. banc 2001)(holding that the Driver retains the burden of persuasion at all times). In *Conrad v. Director of Revenue*, the court stated, "Conrad [the licensee] had the burden at trial to prove that he was eligible for a limited driving privilege. Conrad offered no evidence to show he was eligible statutorily based on Director's answer." 20 S.W.3d at 609 (internal citation omitted). Similarly, in this case, Director's Answer called into question facts pled by Driver in his petition, yet Driver agreed to submit the matter on the record instead of attempting to rebut Director's claims that he had a felony conviction and was a habitual drunkard.

Section 302.309.3(6)(a) imposes the specific burden on Driver to present evidence to support a finding that: (1) he has not been convicted of any offense related to alcohol, controlled substances, or drugs during the preceding three years; and, (2) his habits and conduct show that he no longer poses a threat to the public safety of this state. Driver neither pled nor presented evidence on either issue.[10]

Here, the trial court based its decision solely on "the pleadings and records in the file." Driver's driving record indicated no alcohol or drug-related *driving* convictions subsequent to his 1994 DWI; however, there was no indication that he had no *non-driving* convictions related to alcohol, drugs, or other controlled substances. *See Jones v. Director of Revenue*, 18 S.W.3d 538 (Mo.App. E.D.2000). Moreover, there must be evidence to support a finding that Driver's habits and conduct show that he is no longer a threat to the public safety of this state. Driver failed to plead that he is no longer a threat and the record does not support such a finding.

Since the revocation of his license in 1991, Driver has received an additional DWI conviction and has twice been convicted of driving with a suspended license,

9. *Contra Conrad v. Director of Revenue*, 20 S.W.3d 607, 609 (Mo.App. E.D.2000)(finding the records as a whole were sufficient to show a prior felony DWI conviction where the conviction was for a violation of Section 577.010 and the sentence was for "three years in the Department of Corrections with a 120–day call-back"); *see also Hicks v. Director of Revenue*, 59 S.W.3d 927, 930–931 (Mo.App. E.D.2001)(finding that a conviction for violation of Section 577.010 coupled with a nota-

tion that the driver was a "DWI Alcohol Persistent Offender" under Section 577.023 was sufficient to find that he had been convicted for a felony involving a motor vehicle.)

10. Driver's application for a limited hardship license also failed to state any circumstance which created an "undue hardship" necessitating a hardship license. *See* § 302.309.3(2)(e).

most recently in September of 2000. Further, Driver had his license suspended or revoked eight different times in addition to his two ten-year denials. "The record strongly suggests that revocation of [Driver's] driving license has not operated as any impediment to [his] continued use of an automobile." *See True v. Director of Revenue,* 773 S.W.2d 241, 242 (Mo.App. W.D.1989). Also, at the time of his petition, his Driver Record indicates that Driver had a total of seventy-six chargeable points, a number well in excess of the points allowable under Section 302.304.3.[11] Driver's Driving Record indicates that he has been convicted of violating Section 577.010 on four occasions in Scott County.

It should be noted that Section 302.309 is remedial in nature; therefore, it was enacted for the protection of life and property and in the interest of public welfare.[12] *Hagan,* 968 S.W.2d at 706. The statute should be interpreted "in order to accomplish the greatest public good." *Id.* "The purpose of subsection .3(5) is to protect the public from those drivers who present a greater risk, not [to protect Driver's] interest in driving." *Id.* "If anything, the greater public good is served by liberally interpreting the hardship driving privilege statute in favor of keeping multiple offenders off the road." *Id.*

We find that, inasmuch as Driver was statutorily ineligible for a limited driving privilege, the trial court was without jurisdiction to grant Driver a hardship license. The order granting hardship driving privileges is reversed.

SHRUM, J., and BATES, J., concur.

---

**11.** Section 302.304.3 states: "The director shall suspend the license and driving privileges of any person whose driving record shows the driver has accumulated eight points in eighteen months."

**12.** With Section 302.060(9), the General Assembly intended to address "the threat to life and property posed by those who repeatedly drink and then drive." *Harper v. Director of Revenue,* 118 S.W.3d 195, 202 (Mo.App. W.D. 2003); *see also Eaton v. Director of Revenue,* 929 S.W.2d 282, 284 (Mo.App. S.D.1996);

*Appleby v. Director of Revenue,* 851 S.W.2d 540, 541 (Mo.App. W.D.1993) (noting that the purpose of Section 302.060(9) is to protect the public from people who repeatedly drink and drive); *White v. King,* 700 S.W.2d 152, 155 (Mo.App. W.D.1985)("The purpose of an enactment such as § 302.060 to deny or delimit driver licensure to persons underage, addicts, drunkards and recurrent intoxicated violators, is not to punish a licensee, but to protect the public.").