Schierstein v. Schierstein.

---

CORA SCHIERSTEIN, Appellant, v. ARTHUR C. SCHIERSTEIN, Respondent.

| 68 | 205 |
| 87 | 36 |

St. Louis Court of Appeals, December 22, 1896.

1. **Divorce:** INDIGNITIES: ACTS AND CONDUCT OF OTHERS THAN HUSBAND: COMMUNICATIONS BETWEEN HUSBAND AND WIFE: EVIDENCE. In a suit for divorce by the wife, it was not error to exclude evidence of alleged indignities offered her by defendant's mother and sisters, not shown to have been communicated to defendant. Nor was it error to exclude evidence of conversations between plaintiff and defendant, not made in the presence of a third person.

Schierstein v. Schierstein.

2. ———: ———: CONVERSATIONS BETWEEN HUSBAND AND WIFE IN PRESENCE OF THIRD PERSON. A communication from the husband to the wife in the presence of an infant child or other person incapable of comprehending it, is not a conversation in the presence of a third person.

3. ———: FINDING: WEIGHT OF EVIDENCE. In divorce proceedings the appellate court will look into the evidence, and determine the merits of the particular case; but in doing so the court will have regard for the findings of the trial judge, and his judgment will not be disturbed where it is not opposed to the weight of the evidence.

*Appeal from the St. Louis City Circuit Court.*—HON. JOHN M. WOOD, Judge.

AFFIRMED.

*John A. Gilliam* for appellant.

It was the husband's duty to protect and defend the good name of his wife, and he was so far as came to his knowledge responsible for the acts and language of his relatives which he did not try to prevent. Brown on Div. [1 Ed.], 138; *Albee v. Albee*, 31 N. E. Rep. (Ill.) 153; *Olcott v. Olcott*, 25 Atl. Rep. (N. J.) 469; *Day v. Day*, 50 N. W. Rep. (Iowa) 979; *Hutchins v. Hutchins*, 24 S. E. Rep. (Va.) 903.

The fact that plaintiff made complaint to her husband of the language and actions of his mother ought to have been admitted. That fact the wife could prove. Whar. Crim. Law [10 Ed.], secs. 565, 566; Rosc. Crim. Ev. 26 [8 Ed.], star pages 41–47; *Woodin v. People*, 1 Park (N. Y.), 464; *State v. Knapp*, 45 N. H. 148; *State v. Carroll*, 32 Atl. Rep. (Vt.) 235; *People v. Stewart*, 32 Pac. Rep. (Cal.) 8.

The conversation in the presence of the baby should not have been excluded. It was not a confidential communication. *Briggs v. Briggs*, 20 Mich. 43; *Goodman v. Goodman*, 26 *Id.* 417.

See, also, as to conversations between husband and wife, *State v. Newberry*, 43 Mo. 429; *Darrier v. Darrier*, 58 *Id.* 222; *Sharpe v. McPike*, 62 *Id.* 300; *Henry v. Sneed*, 99 *Id.* 407.

The uncorroborated testimony of plaintiff, if believed, is enough to justify the divorce. *Flattery v. Flattery*, 88 Pa. St. 27.

*Frank E. Richey* for respondent.

The court properly excluded evidence of the alleged offensive acts and language of respondent's relatives towards appellant, which were not shown to have been brought to respondent's knowledge. *Day v. Day*, 50 N. W. Rep. (Iowa) 979.

The court properly excluded conversations between the husband and wife, which took place in the absence of all other persons. *Brown v. Brown*, 53 Mo. App. 453; *Moore v. Moore*, 51 *Id*. 118; *Berlin v. Berlin*, 52 *Id*. 151; *Miller v. Miller*, 14 Mo. App. 418; *King v. King*, 42 *Id*. 454; *Ayers v. Ayers*, 28 *Id*. 97.

BIGGS, J.—The parties to this suit were married on June 8, 1894, and separated January 15, 1896. Immediately after their marriage they took up their abode with the defendant's family, which consisted of his father and mother and two married sisters. They boarded until the summer of 1895, when they rented two rooms in the second story of the house, furnished them and began housekeeping. The plaintiff sues for divorce. One of the alleged grounds is that on divers occasions during the time plaintiff lived with defendant his mother and sisters offered her many indignities, which rendered her condition intolerable. Specifically stated the indignities were that a few days after the marriage the mother, after learning that the plaintiff's father did not own the house he was living in, said to plaintiff: "Well, if I had known it, Arthur (meaning the defendant) never would have married a poor girl," and that on the fourteenth day of January, 1895, she

also denounced the plaintiff as "a common chippy," and offered her at the time other indignities. It was averred that the conduct of the mother and sisters was communicated to defendant, and that he failed and refused to remonstrate with them, or to in any manner protect plaintiff against insult.

Concerning the overt acts of the defendant, the petition states that in March, 1895, plaintiff was at her father's house for a month, and that during that time their baby was born; that defendant seldom came to see her, and then only remained for a few minutes, and that after plaintiff returned home he spent his evenings away from her, and visited various places of amusement; that on November 18, 1895, she put her arms around the defendant's neck and asked him if he really wanted her and the baby to leave him, when he violently pulled her arms from his neck and hurled her across the room against a wardrobe, and that on January 14, 1896, he ordered her to leave him.

The defendant admitted the marriage and separation but denied all other allegations.

Upon a hearing the plaintiff's bill was dismissed and a judgment entered against her for the costs. She has brought the case here for review and complains of the action of the court in excluding competent evidence offered by her, and further that under the evidence which was admitted, the decree ought to have been for her.

The complaints as to the evidence are that the circuit court excluded all evidence of the alleged acts and conduct of defendant's mother and INDIGNITIES: sisters, unless communicated to the de- acts and conduct of others than husband: fendant, and also ruled that evidence of communications between husband and wife: conversations between plaintiff and de- evidence. fendant were inadmissible, unless it appeared that a third person was present.

The ruling of the court as to both questions was right.   It was the duty of the defendant to protect his wife against indignities offered by his relatives, but he could not be held responsible for their conduct, unless it was shown that he was advised of it and then refused or failed to remonstrate with them, or to remove his wife from the house.

The other ruling is in conformity with the decisions of the supreme court and this court. *Moore v. Moore*, 51 Mo. 118; *Berlin v. Berlin*, 52 Mo. 151; *Buck v. Ashbrook*, 51 Mo. 539; *Vogel v. Vogel*, 13 Mo. App. 588; *Miller v. Miller*, 14 Mo. App. 418; *Ayers v. Ayers*, 28 Mo. App. 97; *King v. King*, 42 Mo. App. 454; *Brown v. Brown*, 53 Mo. App. 453.   In *Moore v. Moore, supra,* and *Berlin v. Berlin, supra,* which were the first cases in which the question was discussed, it was held that under the statute (section 8918, R. S. 1889), the parties to a divorce suit might testify, but that under the proviso contained in section 8922, the examination could not extend to communications or conversations between the spouses, unless such conversations occurred in the presence of a third person. Thus if a husband charges his wife with infidelity in the presence of another, the wife may testify to it, but if he denounces her privately as a strumpet, it is regarded as a confidential disclosure.   This limitation is at least open to criticism, and in our opinion not well founded in reason.   The policy of allowing parties to a divorce suit to testify is a doubtful one, but if adopted they should be permitted to give in evidence all conversations or communications between themselves which have a direct tendency to prove or disprove the alleged grounds of divorce.   However, we must deal with the law as we find it, and we would

CONVERSATIONS between husband and wife in presence of third person.

VOL. 68 app—14

probably perform our whole duty by following it, without adding our criticism.

The plaintiff offered to testify that the defendant (in her presence) spoke to their child, which was then about nine months old, and said: "Well baby you will trust your mother a good deal more than I; you are not afraid that she will poison you." Upon the objection of the defendant the evidence was excluded. It is insisted by plaintiff's counsel that this was a communication in the presence of a third person, and hence could not be treated as confidential. We can not agree to this. The reason for the exception to the rule, which excludes all conversations between the spouses as being privileged, is, that by talking in the presence of others they voluntarily remove the seal of secrecy. The reason for this exception fails when the conversation is had in the presence of an infant or other person totally incapable of comprehending it.

In reviewing the proceedings in divorce cases the appellate court should look into the evidence and determine for itself the merits of the case, FINDING: weight of evidence. but in doing so deference should be paid to the findings of the trial judge. If his judgment is not opposed to the weight of the evidence, it should not be disturbed. Concerning the alleged indignities offered the plaintiff by the defendant's relatives, and of which there is some evidence that defendant had knowledge, it suffices to say that the charges are supported by the testimony of the plaintiff herself and are denied by the defendant's mother and sisters. The trial judge had the witnesses before him, and he evidently believed the defendant's witnesses. We would not be justified in setting aside the decree as to these matters.

The only act of cruelty testified to by plaintiff was that the defendant angrily tore her arms from his neck

and threw her against a wardrobe. The occasion for this outburst of anger as she states was the reception of a letter from the plaintiff's attorney requesting a conference with defendant about his domestic affairs. The plaintiff admitted that the defendant was a man of good habits, and that prior to the time mentioned he had always treated her courteously, but not at all times with the consideration that was due to her. The defendant absolutely denied the commission of the offense. It is likewise manifest that we ought not to disturb the judgment on account of this alleged indignity.

The plaintiff's evidence was to the effect that during the period of her confinement at her father's house the defendant did not visit her as often as he ought, and that he remained with her but a few minutes at a time. In this she is in a measure corroborated by her father's testimony. The defendant testified that he visited her frequently and remained with her as long as his duties to his employer would admit; that he did not spend the nights at his father-in-law's house for lack of sleeping accommodations; that he would have spent more time with his wife but that he was rate clerk in a railroad office, and had to work evenings in order to get through. Accepting the plaintiff's statements as true the facts would not amount to indignities within the meaning of the statute. It is just, however, to the defendant to say that all the testimony shows that he did visit his wife during her confinement at times, and that he himself testified to having visited her as often as his business would permit.

We are of the opinion that the judgment of the circuit court will have to be affirmed. It is so ordered. All the judges concur.