EDWARD W. GRUNER, Appellant, v. DORINDA M. GRUNER, Respondent.

St. Louis Court of Appeals. Argued and Submitted March 3, 1914. Opinion Filed April 7, 1914.

1. APPELLATE PRACTICE: Divorce: Conclusiveness of Finding. In an action for divorce, the appellate court, while giving great deference to the finding of facts by the trial court, is bound to examine the record for itself and determine the very right of the case.

2. DIVORCE: Indignities: Refusal to Cohabit. The refusal of a wife to maintain marital relations with her husband, while an element of desertion, is not an indignity.

3. ———: ———: ———. Where a wife refuses to maintain marital relations with her husband, and he is without legal fault in the matter, he not only has the right, but it is his duty, to leave her, if he desires to avail himself of this act in an action for divorce, and his doing so does not constitute desertion.

4. ———: Desertion: Desertion After Filing Suit. Where a wife refused to maintain marital relations with her husband, the absence of the husband from his home, from the time he brought suit for divorce to the time of the filing of the wife's cross-bill, more than a year afterwards, did not warrant the granting of a divorce to the wife on the ground of desertion.

5. ———: Indignities: More Than One Indignity Required. A single indignity is not sufficient to warrant a divorce under Section 2370, R. S. 1909, since that section uses the term "indignities."

6. APPELLATE PRACTICE: Privileged Communications Admitted Without Objection: Divorce. In an action for divorce, testimony by the wife, which was received without objection, must be considered, on appeal, although if objection had been made, it should have been rejected under the rule of privileged communication between husband and wife, as to which neither, in the absence of a third person is competent to testify.

7. DIVORCE: Necessity of Corroborative Evidence. Although the husband and the wife are competent witnesses in divorce cases, a divorce should rarely be granted without some corroborative evidence.

8. ———: Burden of Proof. A spouse praying for a divorce by a cross-bill has the burden of establishing the allegations of the cross-bill by a preponderance of the testimony.

9. ———: Grounds: Non-Support. Non-support is not, in itself, a ground for divorce.

10. ———: Interest of Public. An action for divorce is triangular —one in which the married parties are plaintiff and defendant, and the public occupies, without being mentioned in the pleadings, the position of third party.

11. ———: Prerequisites: Necessity of Being Injured and Innocent Party. In actions for divorce, the question is not, who is most at fault, but whether either is or both are at fault, and if the latter condition obtains, the court grants no relief.

12. ———: Indignities: Sufficiency of Evidence. In an action by a husband for divorce, evidence *held* insufficient to warrant a decree for defendant on her cross-bill asking for a divorce on the ground of indignities.

Appeal from St. Louis City Circuit Court.—*Hon. William M. Kinsey*, Judge.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART (*with directions*).

*H. E. Sprague* for appellant.

(1) Acts which furnish cause for divorce on one statutory ground, are not necessarily confined to that

ground alone; they may furnish all or part of other grounds. Cannon v. Cannon, 17 Mo. App. 390; McCann v. McCann, 91 Mo. App. 4; Million v. Million, 106 Mo. App. 683; Kempf v. Kempf, 34 Mo. 214; Williams v. Williams, 121 Mo. App. 349. (2) A wife's refusal to grant her husband sexual intercourse is not merely an element of desertion, but is an indignity. Williams v. Williams, 121 Mo. App. 349. (3) What will constitute indignities sufficient to render one's condition intolerable is a question to be determined by the facts in each case. Hooper v. Hooper, 19 Mo. 355; Kempf v. Kempf, 34 Mo. 214; Goodman v. Goodman, 80 Mo. App. 274. (4) An allowance of seven dollars per week to a wife, for the family table and support of herself, by a husband earning from $75 to $90 per month, and out of his salary paying off a mortgage on a house and lot purchased in their joint names, and renovating and repairing same, where the husband maintained a vegetable garden from which he supplied the table with seasonable vegetables, and the wife raised chickens, and retained the proceeds of chickens and eggs, and where the couple live in an outlying suburban community, is not an inadequate allowance, and does not constitute an indignity. Owen v. Owen, 48 Mo. App. 213. (5) A complete estrangement of four or five years' duration, produced by the wife, is an indignity; and a single remark by the husband is not a sufficient provocation. Griesedieck v. Griesedieck, 56 Mo. App. 94. (6) A wife who is instrumental in producing the cause for which she seeks a divorce from her husband, even though such cause exist, cannot avail herself of it because of her having contributed to the result. Davis v. Davis, 60 Mo. App. 556. *A fortiori,* defendant should not be permitted to maintain her cross-action on the ground of desertion. (7) Domestic unhappiness, produced by uncontrolled temper and a lack of conciliatory spirit of the parties, will not justify a divorce to either party. Webb v. Webb, 44 Mo. App.

229; Holschbach v. Holschbach, 134 Mo. App. 247. (8) Though appellate courts, in divorce cases which contain conflicting testimony involving the credibility of witnesses, will defer to the findings of the trial court, because of its superior opportunity of judging of such credibility, still an appellate court is not bound by these findings, and if enough remains in the evidence, after all contradicting and conflicting testimony is excluded from consideration, to reach an independent conclusion, the appellate court will do so. Davis v. Davis, 60 Mo. App. 557. (9) The trial court found defendant was at fault; if both husband and wife are at fault neither is entitled to receive a divorce. Barth v. Barth, 168 Mo. App. 423; Torlotting v. Torlotting, 82 Mo. App. 201; Lawlor v. Lawlor, 76 Mo. App. 637; Morrison v. Morrison, 62 Mo. App. 299; Nagel v. Nagel, 12 Mo. 53. (10) A court will not attempt, with nicely adjusted scales, to weigh which of the parties is the most or the least in fault, but will award a divorce to neither. Barth v. Barth, 168 Mo. App. 427. (11) If the trial court's findings of fact are sustained, his ruling is in error for under his findings no divorce should be granted. Barth v. Barth, 168 Mo. App. 428.

*Edward A. Raithel* for respondent.

(1) The rule of practice is that appellate courts will review the evidence in divorce cases, but where there is great conflict in it, much weight will be given to the finding of the trial court, which is by far the best judge of the credibility of the witnesses. Nichols v. Nichols, 39 Mo. App. 291; Bryden v. Bank, 15 Mo. App. 580; Snell v. Harrison, 83 Mo. 651; Sharpe v. McPike, 62 Mo. 300; Hodges v. Black, 76 Mo. 537; Royle v. Jones, 78 Mo. 403; Maget v. Maget, 85 Mo. App. 12-13; Stephenson v. Stephenson, 29 Mo. 95; Coulter v. Coulter, 22 Mo. App. 7; Greene v. Greene, 22 Mo. App. 25; King v. King, 42 Mo. App. 454; Schin-

stein v. Schinstein, 68 Mo. App. 205; Lawlor v. Lawlor, 76 Mo. App. 637; Munchow v. Munchow, 78 Mo. App. 99; Torlotting v. Torlotting, 82 Mo. App. 192; Hinrichs v. Hinrichs, 84 Mo. App. 31; Endsley v. Endsley, 89 Mo. App. 596. (2) Any misconduct which is a cause for divorce, may be set up or alleged in a cross-complaint as a ground for affirmative relief, although it occurred after the institution of the suit. Sec. 2372, R. S. 1909; Hoffman v. Hoffman, 43 Mo. 547, 14 Cyc. 673, 675; Halsted v. Halsted, 5 Misc. (N. Y.), 416; Blarc v. Blarc, 74 Hun. 385; Cornwall v. Cornwall, 30 Hun. 573; Strong v. Strong, 28 How. Pr., 432; Martin v. Martin, 33 W. Va., 695; Smith v. Smith, 4 Paige, 432; Wilson v. Wilson, 40 Ia. 230.

REYNOLDS, P. J.—Plaintiff commenced this action for divorce on the 23rd of December, 1909. Averring that he and his wife were married on February 25, 1890, and that they had continued to live together as husband and wife until the year 1904, the petition avers that about 1903, defendant, wholly disregarding her duty as the wife of plaintiff, became dictatorial, overbearing and abusive in her attitude toward him, called him vile epithets, spoke of him in vile language to other persons, and told other persons that plaintiff had abused her and refused to provide for her when such was not a fact; that defendant neglected her household duties, allowed dirt and filth to accumulate in their home, and when plaintiff complained about this condition, defendant acted sulky, refused to talk to him or to answer him; that she told plaintiff he "ought to go around with other women as other men did," and that all of these foregoing acts occurred on or about the years 1903 and 1904; that in October, 1905, defendant separated herself from him and from that time on, while remaining in the same house, refused to have any marital relations with him, this continuing until plain-

tiff left the home, about December, 1909, when he instituted this present action and that all of these acts of defendant constituted such indignities as to render plaintiff's condition intolerable. Averring that he had always demeaned himself and discharged all his duties as husband and treated defendant with kindness and affection, and that one child was born of the marriage, a daughter, eighteen years of age at the time of the institution of the action, who resides with her mother, plaintiff prayed for a divorce.

It appears that there were motions and demurrers filed to the original petition, until finally, on May 24, 1911, nearly a year and a half after the institution of the suit, defendant filed her answer and cross-bill. The answer, after a specific denial of all the averments of plaintiff, except the marriage and the fact that plaintiff had absented himself from defendant since December 23, 1909, and denying that he had faithfully demeaned himself as a husband, or that he had sustained the indignities at her hands which he set up, averred by way of cross-bill that she, defendant, is the injured and innocent party and prays a divorce from plaintiff, averring that without cause and although she had treated him with kindness and affection plaintiff had absented himself from her without a reasonable cause "for the space of more than one whole year next preceding the filing of this answer and cross-bill, without the consent and against the wishes of plaintiff, to-wit, from the 23rd day of December, 1909, up to the present time." Defendant further sets up that plaintiff had offered her such indignities as to render her condition intolerable, in this: That in January, 1903, plaintiff, in an abusive and theatening manner and because defendant refused to leave him, as he had commanded her to do, stated that he would have her head examined and bribe a physician to pronounce her insane and then procure her incarceration in an insane asylum, and that he thereupon theratened to kick her out

of the house; that in July, 1903, plaintiff refused to give defendant but one dollar, the expenditure of which he compelled defendant to account to him for in a book which he directed their daughter to keep; this. for the purpose of preventing defendant from at any one time securing enough money with which to purchase shoes and clothing, of which she was in dire need. That for the nineteen years of their marriage, ending in 1909, plaintiff failed and refused to provide defendant with necessary and proper clothing and apparel, or the means with which to obtain the same, although fully able to do so and although often requested by defendant therefor, and that in that period of time plaintiff had provided for defendant but one dress, two dress skirts, one winter coat and one spring coat, although defendant made repeated requests of plaintiff therefor, and that on account of plaintiff's failure and refusal to provide clothing defendant was compelled to accept cast-off clothing from friends and relatives, and that the money she received as Christmas presents and which she obtained from the sale of chickens and eggs, was used by her to purchase clothing; that on or about September, 1905, plaintiff repeatedly called and applied to her vile epithets to such an extent that it became intolerable, so that defendant was compelled to sleep with her daughter, attending, however, to all the household work, cooking, cleaning, mending plaintiff's clothes and washing, and that for the last six months or a year that defendant and plaintiff resided together, plaintiff repeatedly refused to eat his meals at the same table with defendant, leaving the table with his meals unfinished as soon as defendant sat down to eat; that. after repeated conduct of this kind on the part of plaintiff, defendant would wait until plaintiff concluded his meal before she would go to the table; that their daughter accidentally spilled some water and when the daughter desired to clean it up, plaintiff said to the daughter, "Don't you do

that, one dog is enough around here," referring, as
defendant avers, to her; that during the year 1909,
plaintiff would only speak to defendant in a vile and
disrespectful manner; that plaintiff repeatedly smelled
around defendant's skirts, applying a vile epithet to
her, and that whenever plaintiff would meet defend-
ant in a room he would hold his clothing so it would
not touch her and would walk backward so he could
not see her; that on or about June, 1907, and at divers
other times thereafter, plaintiff told defendant to go
out of the house, saying, "I have some one to bring in
here and you are in the way," and that from June to
December, 1909, he spent on an average of two nights
in each week away from home at a place unknown to
defendant. Averring that the indignities so offered
to defendant by plaintiff rendered her condition intol-
erable, defendant prays a divorce.

A reply was filed to the cross-bill, denying all the
allegations therein contained.

The cause was tried before the court on Novem-
ber 20, 1911, and at the succeeding term, the court en-
tered a decree dismissing plaintiff's petition and grant-
ing defendant a divorce on her cross-bill as also ali-
mony at the rate of $25 per month, payable on the first
day of each month after the date of the decree, De-
cember 5, 1911.

The learned trial court in rendering the decree,
handed down a memorandum of his conclusions. In
this the court stated that the grounds for divorce set
up by plaintiff were indignities, among these being a
refusal of marital rights to plaintiff by defendant.
The court held such refusal, unaccompanied by other
acts, is one of the elements of desertion, but is not an
indignity, and that the several acts charged as indig-
nities had not been established by the evidence, adding:
"It should not be understood, however, in so holding,
that the wife has been wholly blameless, and the hus-
band at all times at fault. It is sufficient to say that

the evidence does not establish a right to divorce in the plaintiff on the ground of indignities, and the conclusion to be necessarily drawn therefrom is that he had no legal right to abandon defendant on the 23rd day of December, 1909, when, according to his own testimony, he ceased to live under the same roof with her.''

The learned trial judge then states that after this action had been pending for almost a year and five months, defendant filed an answer and cross-bill, in which she alleges as ground for a divorce from plaintiff, among other grounds, desertion, continuing for the period of one year and more from December 23, 1909, to the date of the filing of the cross-bill. Finding that the proof shows that prior to the date of filing the cross-bill plaintiff had absented himself from defendant without reasonable cause for a period of more than one whole year next before the filing of the cross-bill and without her consent, the court enters into a discussion of the question as to whether the act of plaintiff in leaving the home and separating himself from defendant at the time and until she filed this cross-bill, something like a year and a half later, can be considered, the learned trial court states that he finds no authority in this State upon the question, and that some of the judges of the circuit court of the city of St. Louis are of the opinion that a decree cannot be granted to the defendant under the circumstances in this case. While holding that, in his own view of it, there is no analogy between actions at law where a counterclaim or set-off may be pleaded by defendant, and a suit for divorce, when the defendant may, by answer and cross-bill not only defeat plaintiff's action but establish a ground for divorce in her own favor, he states that he is inclined to hold that the rights of the parties both upon bill and cross-bill are to be determined as upon the time of the final decree and not as of the time the original suit was begun. He accordingly dismissed

plaintiff's bill and granted the decree to defendant up-
on her cross-bill.

A motion for new trial having been filed, the
learned trial judge, in overruling it, stated that as he
had said in the former memorandum which was filed,
no other allegation of indignity complained of by the
husband was sustained by the evidence offered in his
behalf, except the fact that the wife had refused to
sustain marital relations with the husband and that
she had then shown such refusal *alone* is not, in legal
contemplation, an indignity but one of the elements of
desertion under the law of this State.    He further
states that it may be conceded that, taken in connec-
tion with other acts, such refusal may go to make up
the sum total of statutory indignities, and continues:
''If the reason assigned by the wife for occupying an-
other bed than that of her husband be sustained by
the proof (and the court so found), then no self-re-
specting woman could do otherwise than she did.  Dur-
ing the four years of estrangement, the husband never
attempted to retract the insult he had offered her, but
on the contrary seems to have repeated it.''  And the
court concludes:  ''I purposely avoided reference to
this unpleasant feature of the case when writing a
former memorandum, but since counsel attacks so ve-
hemently the reason given for the decree, I may say
that the fact just mentioned influenced the result.''

The plaintiff praying for an appeal, the court in
granting it, awarded an allowance of suit money in
favor of defendant, ordering plaintiff to pay her as and
for suit money and attorney's fee pending the appeal,
the sum of $90, and thereupon granted the appeal.

A very painstaking and careful consideration of
the testimony in this case leads us to agree with the
learned trial court in denying plaintiff a divorce, but
compels us to reverse his action in granting a decree
to defendant.

It has been many times held, both by the Supreme Court and by the several Courts of Appeals, that while great deference is to be paid to the finding of fact by the trial court, the appellate court is bound to examine the record for itself and determine from that examination the very right of the case as it sees it, as presented by the evidence. Probably no better definition of the duty of the appellate courts in cases of this kind is to be found anywhere than in what is said by Judge Lewis while presiding judge of this court in Clarkson v. Clarkson, 22 Mo. App. 236, 1. c. 246, 247. Without repeating what is there so well said, we refer to it as covering this branch of the case.

Plaintiff founded his right to relief on the ground of indignities. The most substantial act upon which plaintiff relied as an indignity, was the refusal by the wife of marital rights. That, as correctly held by the learned trial judge, when coupled with other acts, as for instance desertion with the willful intent to absent oneself, constitutes desertion but not an indignity. [Schouler on Domestic Relations (5 Ed.), sec. 220b, p. 338.] Failure to maintain connubial relations, while an element of desertion, is not, in itself, desertion. [Schouler, p. 339; Williams v. Williams, 121 Mo. App. 349, 1. c. 356, 99 S. W. 42.] The other acts relied upon as indignities are not sufficiently proven. We do not quite understand what is meant by the learned trial judge when he says that ''the conclusion to be necessarily drawn therefrom (alleged indignities) is that he (plaintiff) had no legal right to abandon defendant on the 23rd day of December, 1909, when, according to his own testimony, he ceased to live under the same roof with her.'' If it was true that defendant denied plaintiff his marital rights—as it is not only not denied but admitted that she did—and if that was without legal fault on the part of plaintiff, he not only had the right, but it was his duty if he desired to avail himself of this act, to leave defendant; and doing so was

not desertion on his part. He could only avail himself of the defendant's act of refusal by leaving their common abode, unless she had left; in short, he must have given up residence with his wife. [State v. Weber, 48 Mo. App. 500, 1. c. 504; Davis v. Davis, 60 Mo. App. 545, 1. c. 554; Williams v. Williams, supra, 1. c. 357.]

As before remarked we entirely agree with the learned trial judge that plaintiff did not establish facts which amounted in law to such indignities as entitled him to a decree.

This brings us to a consideration of the action of that court in granting defendant a decree of absolute divorce. To the correctness of this we cannot agree. It would appear by the first memorandum which the learned trial judge handed down that he sustained the cross-bill on the ground of desertion, the desertion relied upon occurring when plaintiff left his wife and his home, December 23, 1909, the day upon which he instituted this action and continuing down to the time of the filing of the cross-bill by the defendant May 24, 1911. It is true that there is no decision in our State that bears directly upon this point and we have found no direct authority in the textbooks. Decisions of courts of other States throw but little light on the matter, for in so far as they have been called to our attention they have been founded upon statutes radically different from our own. The decision of our Supreme Court in an old case, Stokes v. Stokes, 1 Mo. 228 (side page 231, reprint 1843), a decision handed down in 1823, in a way throws some light on this question. It is there said (page 230), in criticising the averments of the bill and the finding of the jury as to the charge of adultery which was made in the petition, that so far as concerns those averments and findings, the adultery "might have been on the eve of the trial, long after the commencement of the suit," and for this the court held both were insufficient. This holding clearly indicates that if the act of adultery charged

had been committed "on the eve of the trial," or "long after the commencement of the suit," it afforded no ground for divorce.

In Clarkson v. Clarkson, supra, it is noted at page 252, that matters occurring after the commencement of the suit had been pleaded in the amended petition and amended answer and that no objection had been made to these at the trial. But our court, not putting its holding on lack of objection, says these were matters rather of aggravation than of original causes of action or defense, which seems to mean that unless they had been matters of original cause of action, growing out of it, in existence when the action was commenced, they have been improperly admitted in the pleadings and in evidence.

Our own view of the matter is, that absence from the time of commencing the action down to the time of filing the cross-bill cannot be charged as desertion in the cross-bill, or set up as a ground for maintaining the cross-bill. The plaintiff had a right, yea, as before said, was bound to absent himself, separate himself from the habitation of defendant, if he desired to avail himself of her refusal to grant him marital rights.

That phase of the case eliminated, we must then turn to the question of the matter of indignities and whether such indignities as constitute a ground for divorce have been proven in this case by the wife. As will be seen by the recital which we have given of the first memorandum opinion handed down by the learned trial judge, he does not appear to base his finding for defendant on indignities established but upon desertion, that desertion occurring between the commencement of the action by the plaintiff and the filing of the cross-bill by the defendant. After finding that to have been desertion, and without cause, he concludes his finding with stating that he finds for defendant on her cross-bill. He had before that stated that in holding that the several acts of indignities alleged by the hus-

band, excluding therefrom the denial of marital rights, had not been established by evidence; but that "It should not be understood, however, in so holding that the wife had been wholly blameless and the husband at all times at fault." When the first finding was attacked in the motion for new trial as not sustained by the evidence, the learned trial judge, as we have seen, states: "If the reason assigned by the wife for occupying another bed than that of her husband be sustained by the proof (and the court so found), then no self-respecting woman could do otherwise than she did," and he further states that during the four years of estrangement the husband never attempted to retract the insult he had offered his wife but on the contrary seems to have repeated it, and as we have before noted the learned trial judge sets out that he had purposely avoided reference to this unpleasant feature of the case when writing his former memorandum but that since counsel attacks the reasons given for the decree so vehemently, he may add "that the fact just mentioned influenced the result." If we could understand by this that it controlled the result, it would be another matter, but as that merely influenced the result, as stated by the trial court, it seems probable that the real basis of the decree rendered in favor of the wife was the erroneous holding that desertion by the husband had been established. So by this supplemental memorandum we must hark back to the alleged act of gross indignity by the husband to the wife, which, in the opinion of the trial court, justified her in putting an end to the marital relations between them. If it is true that the husband did make the remark attributed to him, and repeated it, for the statute refers to "indignities," not a single indignity, then the wife was warranted, nay, every instinct of wifely, womanly, dignity demanded that she cast off her husband. A very careful reading of the testimony fails to show that even according to the wife's own testimony when

subjected to examination by counsel as well as by
the court, that this grossly indecent epithet, applied
by the husband to the wife, was applied, according to
her own testimony, more than once and that was in the
fall of 1905, when she abandoned her conjugal rela-
tions with him.  She avers in her answer and so testi-
fies that she abandoned his bed and slept with her
daughter in September, 1905.  It is true that she testi-
fied that he had repeated his insulting remark down to
the time he left, and the learned trial court found that
"he *seems* to have repeated it," but an examination of
her testimony and attempting to reconcile all of it, does
not sustain this; fails to show that she testified to its
repetition.  Nor does it appear that this epithet, which
she alleges her husband uttered, nor for that matter
the alleged action of her husband in smelling around
her skirts and making indecent remarks, were in the
presence of anyone, although she did say that their
daughter was present when he first made the remark.
She testified to these without objection so that it is
before us, although it is well settled by many decisions
in our State that if objection had been made it should
have been ruled out, under the rule of privileged com-
munications between husband and wife, as to which
neither, in the absence of a third party to the utterance
of conversation, could have testified.  [Ayers v. Ayers,
28 Mo. App. 97; Schierstein v. Schierstein, 68 Mo. App.
205, l. c. 209; Schweikert v. Schweikert, 108 Mo. App.
477, 83 S. W. 1095; Berlin v. Berlin, 52 Mo. 151.]  The
rule stated in Meyer v. Meyer, 158 Mo. App. 299, l. c.
309, 138 S. W. 70, is stated too broadly and as stated
is not supported by the cases cited.

The plaintiff testifying positively denied ever hav-
ing made any such remarks at any time, or committed
the alleged acts.  Thus we have the cross testimony of
the two parties interested in the suit, uncorroborated by
any third party; the utterance and act resting on the
uncorroborated testimony of the wife.  It has been

said by the Kansas City Court of Appeals in Maget
v. Maget, 85 Mo. App. 6, l. c. 12, that while the hus-
band and wife are competent witnesses in divorce
cases, a divorce should rarely be granted without some
corroborative evidence; and our own court has said
in Reed v. Reed, 101 Mo. App. 176, l. c. 178, 70 S. W.
505, that all proceedings in a divorce suit are to be
conducted as those in other civil actions except in cer-
tain respects where the statutes regulating divorce
suits otherwise provide; that the rules concerning the
introduction of testimony and the weight to be given
to it when admitted, are the same as those which gov-
ern the same topics in other cases. The burthen was
upon the defendant in this case to sustain the affirma-
tive allegations of her cross-bill by a preponderance of
the testimony in the case, and we do not think that this
defendant has sustained that burthen. We say this
with full knowledge of the rule that the appellate
courts recognize the superior advantages of the trial
court in weighing testimony from the demeanor of wit-
nesses, but we must take the record as presented to us
in a case of this kind.

Not only is the wife not corroborated by anyone,
but when we leave her testimony and look at that of
her own witnesses, we find testimony which throws
grave doubt on all that given by the defendant her-
self.

The daughter of these unfortunate parties, a young
woman twenty years of age, was called by her mother
as a witness in her behalf. She testified that both her
father and her mother were very quiet people and dur-
ing all the years of her life, living with them until her
father left the home in 1909, they had never been ac-
customed to carry on much conversation with each
other. She does corroborate her mother in testifying
that on an occasion at the table when she started to
wipe up some water that was on the floor, that her
father had said that she should not do it; that "one

dog is enough around here,'' but it is not to be inferred from this remark that plaintiff was referring to his wife, nor does the daughter say that he did.  For anything that appears by this remark, he might have referred to himself, and it is to be noted that the learned trial judge puts no stress upon this remark as an indignity, placing it entirely upon the remarks uttered in 1905.  That remark about wiping up the water is the only ugly remark testified to by anyone save the wife, as ever having been made by the husband, and it was made over six years before the daughter testified to it.  The daughter was asked by the court if she had ever heard any quarrel between her father and mother just prior to that time.  She answered that she had not, didn't remember whether it was morning or evening, or whether it was at supper or dinner, and remembered no quarrel between them; remembered nothing cross that her father had said to her mother on that occasion, nor had she said anything cross to him.  The court asked her if she had ever heard her father and mother quarrel.  She answered that she had not.  He asked her if she had ever heard her mother use any bad words to her father.  She answered, ''No.  Mamma never said anything like that.''  Asked if she had ever heard her father used bad language toward her mother, she answered, ''No.''  Asked if there were times when her father did not speak to her mother, she said ''Yes,'' and that there were about four years when they did not speak to each other at all; that that was since September, 1905.  At times they would speak a little and at times they would not.  Sometimes her mother would say something to her father and he would not answer, but she did not remember any occasion when her father spoke to her mother and the mother would not answer.  Asked if when they had any difference in the morning by the following evening they would be all right and speak, she answered, ''They never did talk very much.''  In answer to further questions, this daughter testified

that she had never heard them quarrel with each other or use bad language, and asked if her father was a kind man, she answered that he was always kind to her and so was her mother. Asked if prior to the four or five years mentioned, that is prior to the fall of 1905, she had ever seen or remembered any occasion when they were not kind to each other even when they were not talking much together, she answered that she had not; that they were just simply both quiet and "didn't say much."

Beyond all question the offensive remark upon which the learned trial court dwells could not have been uttered in the presence of this daughter, as the mother intimated it had been, but the fact of its utterance rests alone and solely upon the uncorroborated statement of the wife. In our judgment it is not established by the preponderance of the evidence in the case.

But passing that view of it, even if it is true that it was uttered and was of such a character as to justify the wife in severing all of her marital relations with the husband, it was uttered in 1905, and she then and thereby had a legal ground for divorce against her husband. The fact that she never instituted an action and never set up any claim to this matter having occurred, so far as this record shows, until she filed her cross-bill in this case on May 24, 1911, is a very strong circumstance to disprove the fact that it was ever uttered. Moreover, these acts occurred long ago in 1905 and 1906. Says our Supreme Court in Twyman v. Twyman, 27 Mo. 383: "The evidence in this case is not sufficient to warrant a divorce. The specific acts of misconduct alleged in the petition, no doubt, if recent and supported by the necessary evidence, would, under our law, warrant a decree separating a wife from her husband."

When the other alleged indignities are examined they amount to this: That defendant claims that her husband did not supply her with sufficient money to

clothe herself properly with necessary apparel. She alleges in her cross-bill that she had frequently asked him for money with which to buy clothing, but she testifies that she never had asked him for any money for this or any other purpose. It may be said that the husband should have noticed her necessity and without any request from her have provided them, or provided her the means with which to buy necessary clothing, but it does not follow as a matter of law that he was bound to do this. The evidence is that, during the period when the husband and wife were not on speaking terms, he was in the habit of putting two dollars at a time in a purse lying on a table in one of the rooms of the house and whenever he saw that that was empty—that is, that the money which he had put there had been spent—he replenished it. The wife herself testifies that she received all the money realized from the sale of chickens and eggs. Her testimony is that when she had not the money to buy the necessary groceries that she ran up bills for them and her husband paid them without objection. It is in evidence that he paid all the household expenses, such as gas, water, fuel and the like but that he left it to his wife to provide for the table and for herself out of the money that he gave her, but there is no evidence that he limited her to this. The evidence of their daughter is that her father always supplied her while she was attending school, and she went through one of the primary schools and spent a year in one of the high schools in the city, with proper clothing and money for car fare, and when asked if they generally had enough to eat, she answered that they did; that while they did not have many luxuries, they lived along comfortably and that she had never heard her mother complain that she did not have enough to eat nor that she did not have clothes enough to wear. She testified that her father bought all her clothes for her and that she was dressed as well as any of the other girls who attended

school with her. Even if this was a case of entire failure of support, which it is not, non-support is not, in itself, a ground for divorce in this State, as is held by our court in Gallemore v. Gallemore, 115 Mo. App. 179, l. c. 192, 91 S. W. 406. There is no evidence that the husband ever shut off the wife from credit; ever forbid her to buy what she needed and have it charged to him, and he appears to have been a man of some credit. The wife certainly knew that she was within her right in buying necessary clothing and having it charged to her husband. Says our Supreme Court in Harper v. Harper, 29 Mo. 301, "If the husband's cruelty drives his wife from his house, the law sends her out with credit for all that may be necessary for a support according to her husband's state and expectations in life." Surely this prevails with equal force when she remains of the same household.

The wife charges that she had abandoned marital relations with her husband on account of his vile remarks to her; she claims that ever since 1903, and onward, he had failed to furnish her with necessary means with which to procure clothing, yet she continued to live in the same house with him, remained silent and failed to act during the long period of time from 1903 to 1911. Her silence through all these years, and she says that during all the time she never asked her husband for money, never complained to him of want of necessary clothes, never complained to anyone of the acts of her husband, and only recites and complains of them in 1911, in her cross-bill to his action, even then having waited a year and a half after her husband had brought his action before she made these charges against him, is not only strongly persuasive that her statements of all of his acts are to be taken with great allowance, but throws grave doubt on her testimony, and leads to the conclusion that she did not herself take these alleged acts very seriously. Her silence and non-action throw such doubt upon their ever

having happened that we are compelled to conclude that she has failed to establish, by the preponderance of the evidence in the case, facts sufficient to entitle her to a decree.

As was said by the Kansas City Court of Appeals in McMakin v. McMakin, 68 Mo. App. 57, l. c. 62, "An action for divorce is triangular—one in which the married parties are plaintiff and defendant, and the public occupies, without being mentioned in the pleadings, the position of third party. The interest of the latter blends with that of various third persons not before the court. Of such, for example, are the children. . . . Since they cannot protect themselves, the public, represented by the court, is under duty to protect them. The justice of the plaintiff's complaint must be established, not merely between the parties to the record, but as between them and the public, including persons specially interested, yet not before the court." So our court held in Owen v. Owen, 48 Mo. App. 208, where in answer to the contention that the answer being a mere general denial, the defendant could not rest his defense upon any fact which was not necessary to support the plaintiff's case but must set it out according to the statute, in ordinary and concise language, else he will be precluded from giving evidence of it on the trial, our court, speaking through Judge ROMBAUER, said: "But this rule is applicable to divorce cases only in a limited sense, because in such cases the State or the public are presumed to be a party in interest. . . . A default in divorce proceedings admits nothing as against the public. . . . In other respects, however, divorce proceedings as to their trial are governed by the code." Further along in the same case, at page 211, this is quoted from Hoffman v. Hoffman, 43 Mo. 547, l. c. 551: "In cross petitions, or in petitions by one party, the court is bound to look into the conduct of both husband and wife; and if the party seeking a

divorce has been guilty of conduct that would entitle the opposite party to one, he or she must fail, notwithstanding the evidence may otherwise be sufficient. This rule does not apply to conduct, however reprehensible, that would not entitle the other party to a divorce. His or her conduct must come within some of the cases enumerated in the statute.''

We fail to find through all the testimony introduced in this case and the somewhat voluminous recital of her side of the case by defendant, that during the years from 1903 down, defendant made the slightest effort to effect reconciliation between herself and her husband, and according to her own testimony offered him no opportunity whatever nor held out any inducement whatever to him to repair the wrong which she claims he did her, either with respect to the alleged insulting remark, said to have been made in 1905, or in connection with the failure to properly provide her with necessary clothing. They maintained a studied, apparently sullen, silence toward each other. The marital relation is not of that kind. Both parties are bound to bear and forbear toward each other and it is just as much the duty of the wife as it is of the husband to attempt to repair a breach and to do all that either can to heal over diffierences which are very apt to arise in any family. In no manner excusing the husband, we cannot say that the wife is without fault herself. To entitle her to a decree, she must herself be blameless. The wife has not proved her case by preponderating evidence. In actions for divorce, the question is not, who is most at fault, but whether eithei or both are at fault? If the latter, the law and the courts grant no relief.

The judgment of the circuit court granting a divorce to the defendant on her cross-bill is reversed; the judgment dismissing plaintiff's action for divorce and the order allowing $90 suit money, will be affirmed,

Gruner v. Gruner.

the costs of the cause and of the appeal to be taxed against the appellant, and the cause remanded with directions to enter judgment accordingly. *Nortoni* and *Allen, JJ.,* concur.