William R. WATSON, Plaintiff-Respondent,

v.

Inez C. WATSON, Defendant-Appellant.

No. 7496.

Springfield Court of Appeals.

Missouri.

June 11, 1956.

Tom A. Shockley, Waynesville, for defendant-appellant.

Wayne W. Waldo, Waynesville, for plaintiff-respondent.

STONE, Judge.

Defendant, Inez C. Watson, appeals from a decree granting a divorce to plaintiff, William R. Watson, on the grounds "that the defendant has offered plaintiff such indignities as to render his condition in life intolerable and that the defendant has absented herself without a reasonable cause for the space of more than one year next preceding the filing of the petition herein." Section 452.010. (All statutory references herein are to RSMo 1949, V.A.M.S.) Plaintiff, a career soldier (presently with a sergeant's rating) whose "stateside address" is "just wherever the army sends me," married defendant in South Carolina on May 1, 1952, and was sent to Japan that same month. Defendant, accompanied by her two daughters born of a previous marriage, arrived in Japan on May 8, 1953, and the family resided together in Japan until, pursuant to military orders to plaintiff, the family proceeded on the same ship to San Francisco and on the same trains to Fort Leonard Wood, where they arrived on December 5, 1954. After one night at Fort Leonard Wood, plaintiff left to visit his sisters in Indiana and New Jersey. While her husband was on this visit, defendant rented at Rolla (near Fort Leonard Wood) a two-room apartment, furnished except for linens, dishes and cooking utensils. Upon plaintiff's return to Rolla on January 5, 1955, he went to this apartment, "shaved and laid down and slept that afternoon and got up and had a snack for supper." After his two stepdaughters left for a movie, "my wife said that I (plaintiff) could not live in

the same house with her." Plaintiff "took for granted she didn't want me around there, so I moved to the Fort and been there ever since."

In his amended petition on which the case was tried, plaintiff charged three indignities, paraphrased in the language of plaintiff's counsel as "quarreling, refusal to prepare meals and care for plaintiff, and refusal of transportation," and also alleged statutory desertion for more than one year. Section 452.010. Plaintiff, who had never been in Missouri prior to December 5, 1954, admittedly had not "resided within this state one whole year next before the filing of (his) petition" for divorce on June 3, 1955 [Section 452.050]; but, plaintiff sought to bring himself within the statutory exception that, where "the offense or injury complained of was committed within this state, or while one or both of the parties resided within this state," one year's residence is not required. Section 452.050. And, although plaintiff did not plead that the acts, of which he complained, had been commenced "beyond the limits of this state" and had been "continued or completed within this state" [upon proof of which "the court shall have the same jurisdiction as if the cause (of divorce) had commenced and been completed within this state" (Section 452.060)], the trial court made a finding to that effect and plaintiff here relies upon Section 452.060, which, however, "merely clarifies the preceding section" [Hays v. Hays, 324 Mo. 810, 816, 24 S.W.2d 997, 999] and, as will become apparent from our subsequent discussion, we believe to be inapplicable in the instant case.

The testimony of plaintiff and defendant, the only two witnesses on the merits, was in irreconcilable conflict as to what had occurred while the parties were in Japan. There was some evidence tending to indicate that, *in Japan,* defendant had committed the indignities charged, but plaintiff's primary complaint was that, from and after August, 1953, "my wife refused to live with me as man and wife"—"she flatly refused to allow me to make love to her." Plaintiff's explanation of the cause of defendant's alleged refusal to cohabit was that, as ward master in the hospital, he frequently was detained overtime (on one occasion until 2:30 A.M.) and that his wife, without checking the truth of his explanations, falsely accused him of "having affairs with Japanese girls." Defendant's testimony was that, about three months after she had arrived in Japan, plaintiff "began acting strangely and staying out at night," but that, when she "asked about the late hours, I got * * * no plausible answer." Admitting that there had been no cohabitation thereafter and that, "in effect," plaintiff and defendant had "separated" in Japan although they "had quarters together," defendant insisted that the cessation of sexual intercourse "was entirely of his (plaintiff's) choosing"—"he didn't ask and I didn't refuse."

On the issue of credibility thus raised by sharply conflicting evidence, regarded by the trial judge as a "tough question," we are inclined, under the rule of deference, to follow his findings obviously predicated on acceptance of plaintiff's testimony. However, that is not dispositive of the instant appeal, for defendant here continues to insist vigorously that the trial court had no jurisdiction to dissolve the marriage; and, since plaintiff frankly concedes that he had not resided in Missouri one whole year prior to the institution of this action, defendant's jurisdictional objection is well-taken [Barth v. Barth, Mo.App., 189 S.W.2d 451, 454(1)], "unless (as plaintiff contends) the offense or injury complained of was committed within this state, or while one or both of the parties resided within this state." Section 452.050.

Adverting to the three indignities pleaded in plaintiff's amended petition, i. e., "quarreling, refusal to prepare meals and care for plaintiff, and refusal of transportation," meticulous examination and searching scrutiny of the record reveals nothing *occurring in Missouri* which might be said fairly and reasonably to establish "quarreling" within the usual and accepted meaning of that term, and also shows affirmatively that the complaint about "refusal of transportation" referred only to the use of *defendant's* automobile *which was sold before the parties left Japan.* Assuming (without, however,

so determining) that the charged indignity of "refusal to prepare meals and care for plaintiff" was established by plaintiff's testimony concerning defendant's conduct in Rolla on January 5, 1955, when she told plaintiff that he "could not live in the same house with her" (that being the only evidence tending to indicate that such indignity was offered *in Missouri*), plaintiff is left with a showing of only one indignity committed *within this state*. To warrant the granting of a divorce for indignities, those charged and proved ordinarily must be such as to amount to a continuous course of conduct connoting settled hatred and a plain manifestation of alienation and estrangement [Hoffman v. Hoffman, Mo.App., 224, S.W.2d 554, 561(3, 4); Elliston v. Elliston, Mo.App., 215 S.W.2d 63, 69(7, 8); Haushalter v. Haushalter, Mo.App., 197 S.W.2d 703, 708(2, 3)], and clearly a decree of divorce cannot rest on proof of a single indignity. Cadenhead v. Cadenhead, Mo.App., 265 S.W.2d 426, 435(2); Chapman v. Chapman, Mo.App., 230 S.W.2d 149, 151(1); Phillips v. Phillips, Mo.App., 219 S.W.2d 249, 267 (1). It necessarily follows that the decree to plaintiff in the instant case cannot be sustained on the ground of indignities.

Turning to the other ground on which the decree rests, i. e., that defendant had "absented * * * herself without a reasonable cause for the space of one year" [Section 452.010] prior to institution of this action on June 3, 1955, a statutory ground of divorce commonly referred to as desertion [Nolker v. Nolker, Mo., 257 S.W. 798, 803 (8)], the transcript before us indicates that both the trial court and counsel mistakenly assumed that the required one-year period began to run when (as the court apparently believed) defendant without good cause broke off sexual relations with plaintiff about August, 1953. However, although proof of cessation from cohabitation without reasonable cause for one year is essential in establishing statutory desertion [Price v. Price, Mo.App., 281 S.W.2d 307, 312(13), and cases there cited], "(f)ailure to maintain connubial relations, while an element of desertion, is not, in itself, desertion." Gruner v. Gruner, 183 Mo.App. 157, 167, 165 S.W. 865, 867. Consult 27 C.J.S.,

Divorce, § 36c, loc. cit. 570; 17 Am.Jur., Divorce and Separation, Section 108, p. 206. To establish desertion under Section 452.010, "there must not only be a cessation of copula, but the husband and wife must not live together under the same roof." Williams v. Williams, 121 Mo.App. 349, 357, 99 S.W. 42, 44. Thus, if defendant's denial of sexual privilege was without fault on the part of plaintiff, "he not only had the right, but it was his duty if he desired to avail himself of the act, to leave defendant"; and, "(h)e could only avail himself of the defendant's act of refusal by leaving their common abode." Gruner v. Gruner, supra, 165 S.W. loc. cit. 867(3). It will be observed that this conclusion is in complete consonance with the ordinary and commonplace meaning of the statutory language requiring proof that the offending spouse "has *absented* himself or herself" [Section 452.010] and likewise with the holding of our Supreme Court, in banc, that "the essence of (statutory desertion) is the voluntary separation of one of the married parties from the other, the ceasing to live with the other, ostensibly as husband or wife * * *." Nolker v. Nolker, supra, 257 S.W. loc. cit. 803. Whatever may have been the cause of their admitted cessation of copulation in Japan, and whoever then may have been at fault, the parties in the case at bar agree that they continued to reside in the same quarters and to live in a common abode until their return to San Francisco on the same boat in the latter part of November, 1954; and, in any view of the evidence, the one-year period of statutory desertion could not have commenced prior to December 6, 1954 (when plaintiff left defendant at Fort Leonard Wood), which was less than six months prior to institution of this suit. Accordingly, the decree of divorce to plaintiff cannot be sustained on the ground of statutory desertion.

The judgment and decree entered on September 16, 1955, is set aside and the cause is remanded with directions to dismiss plaintiff's petition *without prejudice.*

McDOWELL, P. J., and RUARK, J., concur.