Charles M. COX, Respondent,

v.

Edna COX, Appellant.

No. 34591.

Missouri Court of Appeals, St. Louis District.

Feb. 27, 1973.

Motion for Rehearing or Transfer Denied April 6, 1973.

Application to Transfer Denied May 14, 1973.

B. W. LaTourette, Jr., St. Louis, for respondent.

Shaw & Howlett, Charles Clifford Schwartz, Clayton, for appellant.

CLEMENS, Judge.

Plaintiff Charles M. Cox was granted a divorce from Edna Cox and she appeals. The crucial issue is whether defendant's refusal to have sexual intercourse with her husband was a ground for divorce. We hold it was and affirm.

Considering the evidence in the light of deference due the trial court on matters of conflicting testimony we find the following are facts.

The parties had each been married before and were beyond middle age. Before their marriage in February 1970 plaintiff bought defendant a $1,500 engagement ring and gave her a $10,000 automobile. They drove to San Francisco on their honeymoon and stayed for a week at a luxury hotel. Defendant declined to occupy the same bed with plaintiff from the very first; even on their honeymoon she made him sleep on a couch. When they returned home defendant locked plaintiff out of the bedroom every night and on several occasions met plaintiff's amorous advances by threatening him with a knife; this kept up all during the six months the parties lived together. We adopt the specific finding of the trial court that "the failure to consummate the marriage, as plaintiff desired and defendant adamantly refused to do, underlies and forms the foundation of the obvious marital strife. Plaintiff, after having been denied his normal and rightful marital relations, became ·irritable, upset and disagreeable and, thereafter, defendant would reply in kind, the result being, for all practical purposes, constant turmoil."

■ Defendant contends it was error to grant plaintiff a divorce since the evidence showed he had committed indignities against defendant. This contention is based on defendant's unsupported testimony that plaintiff tore her clothes off and threatened to kill her, all of which plaintiff denied. This factual issue was decided against defendant by the trial court and the ruling is not clearly erroneous. We find no error on this point.

Defendant contends the court erred in finding factually that she had refused to consummate the marriage and that her refusal had provoked marital strife between the parties. Again this argument is based on defendant's uncorroborated testimony, contradicted by plaintiff. It raises a factual issue that was decided against defendant by the trial court and we do not find it was clearly erroneous.

This brings us to the critical issue—defendant's contention that a wife's denial of sexual relations with her husband is not an actionable indignity. Two early cases lend superficial support to this. In Gruner v. Gruner, 183 Mo.App. 157, 165 S.W. 865 [2, 3], plaintiff-husband pleaded that after 15 years of marriage defendant-wife during the next four years refused to have marital relations with him. The court ruled "plaintiff founded his right to relief on the ground of indignities. The most substantial act upon which plaintiff relied as an indignity, was the refusal by the wife of marital rights. That, as correctly held by the learned trial judge, when coupled with other acts, as for instance desertion with the willful intent to absent oneself, constitutes desertion but not an indignity."

Citing Gruner, supra, our own court in Pollard v. Pollard, Mo.App., 98 S.W.2d 132 [1], similarly ruled, saying: "It is quite apparent from the record that the defendant failed to sustain his charges of indignities contained in his cross-bill. At the trial he testified that his wife for the last eight years of their married life refused to have sexual intercourse with him; that he continued to live with her with no thought of divorce but expected to continue to support and take care of her and 'get along' the best he could. The refusal of sexual intercourse was denied by plaintiff. But assuming the truth of defendant's testimony in this respect, this conduct on the part of the plaintiff did not constitute an indignity." The Pollards had been married 35 years and Mrs. Pollard was in poor health mentally and physically. The opinion adds at 165 S.W. 867 that the trial court had found the husband's harsh conduct had given the wife good cause for sleeping alone and "no self-respecting woman could do otherwise than she did."

It is not entirely clear to us whether the opinions in *Gruner* and *Pollard* held that

refusal of marital relations as a matter of law is not an indignity or merely that such refusals did not constitute indignities under the peculiar facts of each case. We can accept this latter view but must reject the interpretation that unexcused refusal of marital relations cannot, as a matter of law, be an actionable indignity.

■ We believe sexual intercourse is an inherent right of marriage. This probably has its roots in the ancient concept that a wife was a husband's chattel. This right is sanctioned by the Judeo-Christian ethic.[1] We also find this right by analogy to the common law allowing damages for the tortious injury to a spouse's right to consortium.[2]

The nature of the right to consortium, including sexual relations, is explained in Reeves v. Lutz, 179 Mo.App. 61, 162 S.W. 280 [14, 15]: "But be all of this as it may, the instant suit proceeds as for a violation of the ancient common-law right of consortium. The husband's right of consortium at common law included the right of the services of the wife to be rendered to the husband, together with the right of her society and the comfort incident to the association and her companionship. Such are the rights which, it is asserted here, defendant has invaded and of which plaintiff has been deprived by his wrongful act . . . the relation and the right are rather of a sacred character than of a valuable monetary interest or right."

■ Having determined that a spouse has the right to sexual intercourse with the other we pass to the crucial issue: Is the unexcused refusal of that right a ground for divorce? Here the plaintiff was granted a divorce on the ground of indignities. By Section 452.010, RSMo 1969, V. A.M.S., that ground exists when one spouse "shall offer such indignities to the other as to render his or her condition intolerable." The statutory words do not specify just what is an indignity nor what renders the other spouse's conduct intolerable. Each case is addressed to the conscience of the court and must be decided on its own facts, which is the obvious legislative intent. Rogers v. Rogers, Mo.App., 430 S.W.2d 305 [3]; Spainhower v. Spainhower, Mo.App., 441 S.W.2d 755 [1, 2].

Countless opinions have stated the broad rule for determining marital fault. As an example we adopt the statement in Cadenhead v. Cadenhead, Mo.App., 265 S.W.2d 426 [2, 3]: "While each divorce action based on alleged general indignities must be determined on its own facts, the courts have said repeatedly that indignities, such as to warrant the granting of a divorce, ordinarily must amount to a continuous course of conduct. A single act, or occasional acts, will not suffice. The acts relied upon must amount to a species of mental cruelty, and must evidence a course of conduct by one of the parties toward the other whereby the other's condition is rendered intolerable through acts of such character and frequency as to be subversive of the family relation."

During six months of cohabitation defendant repeatedly and without just cause denied plaintiff his fundamental right to sexual intercourse. The trial court held defendant's conduct constituted repeated indignities and was subversive of the marital relation between the parties. We agree, holding that the unreasoned denial of sexual intercourse by one spouse can be

---

1. "Therefore a man leaves his father and his mother and cleaves to his wife, and they become one flesh." Genesis 2:24.
   " 'God made them male and female.' For this reason a man shall leave his father and mother and be joined to his wife, and the two shall become one." Mark 10:2.

2. "[O]ne element of consortium [is] the loss of support. Consortium, however, includes, in addition to material services, elements of companionship, felicity and sexual intercourse, all welded into a conceptualist unity." Hodges v. Johnson, Mo.App., 417 S.W.2d 685 [16, 17].

—and in this case was—an actionable indignity subversive to the marital relationship.

Judgment affirmed.

WEIER, Acting P. J., and Mc-MILLIAN, J., concur.